Nos. 2021-1412, -1413, -1414, -1416, -1417, -1418,
-1419, -1420, -1421, -1422, -1423, -1424, -1440, -1442

# United States Court of Appeals for the Federal Circuit

MICROSOFT CORPORATION,
*Appellant*,
v.
IPA TECHNOLOGIES INC.,
*Cross-Appellant*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2019-00810, -00811, -00812, -00813, -00814, -00835, -00836, and -00837.

## RESPONSE AND REPLY BRIEF OF CROSS-APPELLANT MICROSOFT CORPORATION

Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

Joseph A. Micallef
Scott M. Border
Samuel A. Dillon
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005

*Counsel for Appellant*

October 4, 2021

# CERTIFICATE OF INTEREST

Counsel for Appellant Microsoft Corporation certifies the following:

1. The full name of the party represented by me is:

   Microsoft Corporation.

2. The name of real party in interest represented by me is:

   Microsoft Corporation.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

   *IPA Technologies Inc. v. Microsoft Corporation*, C.A. No. 18-cv-01-RGA (D. Del.);

   *IPA Technologies Inc. v. Amazon.com, Inc. et al.*, C.A. No. 16-cv-1266-RGA (D. Del.);

   *IPA Technologies Inc. v. Google LLC*, C.A. No. 18-cv-318-RGA (D. Del.); and

*Google LLC v. IPA Technologies Inc.*, Nos. 21-1179, 21-1180, 21-1185 (Fed. Cir.).

6. Information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

Not Applicable.

Dated: October 4, 2021

/s/ Richard A. Cederoth

Richard A. Cederoth
SIDLEY AUSTIN LLP
*Counsel for Appellant*

# TABLE OF CONTENTS

REPLY OF APPELLANT MICROSOFT ........ 1

SUMMARY OF ARGUMENT IN REPLY ........ 1

ARGUMENT IN REPLY ........ 4

I. The Board Erred in Failing to Find Claims 8-10 and 63 of the 115 Patent and Claim 28 of the 560 Patent Unpatentable as Obvious. 4

II. The Board Erred By Refusing To Consider Petitioner's Arguments Regarding the Obviousness of Claim 29 of the 115 Patent and its Dependents Claims 30-47. ........ 8

III. The Board Erred in Failing to Find Claim 86 of the 115 Patent and its Dependents Unpatentable as Obvious. ........ 10

IV. The Board Erred in Failing to Find Claims 10 and 11 of the 560 Patent Unpatentable as Obvious. ........ 13

V. The Board Erred in Failing to Find Claims 50, 51, and 53-55 of the 560 Patent Unpatentable as Obvious. ........ 14

RESPONSE OF MICROSOFT IN CROSS-APPEAL ........ 20

STATEMENT OF THE ISSUES IN CROSS-APPEAL ........ 20

STATEMENT OF THE CASE AND THE FACTS IN CROSS-APPEAL ........ 20

SUMMARY OF ARGUMENT IN CROSS-APPEAL ........ 21

ARGUMENT IN CROSS-APPEAL ........ 25

VI. Substantial Evidence Supports the Board's Determination that FIPA97 Is Prior Art to the 115 and 560 Patents. ........ 25

A. Substantial Evidence Support's the Board's Determination that Dr. Finin's Testimony Is Corroborated. ........ 28

1. IPA Misapplies the Corroboration Requirement. ........ 28

2. Dr. Finin's Testimony Is Well-Corroborated. ........ 30

3. IPA's Contrary Arguments Fail. ........ 34

B. The Board's Public Accessibility Determination is Supported by Substantial Evidence Regardless of Dr. Finin's Testimony. .......... 36

VII. Substantial Evidence Supports the Board's Determination that the Prior Art Discloses a "Goal Satisfaction Plan" that Uses "Reasoning." .......... 40

A. The Board Properly Considered IPA's "Reasoning" Arguments and the Claims as a Whole. .......... 41

B. The Board's Determination that Kiss Disclosed Using "Reasoning" Is Well-Reasoned. .......... 44

VIII. Substantial Evidence Supports the Board's Determination that the Prior Art Discloses a "Facilitator." .......... 46

A. The Board Could Not Disregard a "Facilitator" Argument that IPA Did Not Make. .......... 47

B. IPA Fails to Identify Sufficient Lexicography or a Disclaimer to Limit the Claimed "Facilitator" As Argued. .......... 51

IX. Substantial Evidence Supports the Board's Determination that the Prior Art Discloses an "Interagent Communication Language (ICL)." .......... 57

A. The Board's Uncontested Construction and Fact Findings Are Fatal to IPA's Arguments. .......... 58

B. The Board's Determination Is Consistent with the Prosecution History and Specification. .......... 62

X. Substantial Evidence Supports the Board's Determination that IPA Failed to Demonstrate Sufficient Nexus between any Secondary Considerations of Nonobviousness and the Claims of the 115 and 560 Patents. .......... 68

A. Substantial Evidence Supports the Board's Determination that IPA Failed to Demonstrate that Siri Practices the 115 and 560 Patents. .......... 69

B. Substantial Evidence Supports the Board's Determination that IPA Failed to Demonstrate Nexus Between Any of Siri's Acclaim or Success and the 115 and 560 Patents. .......... 74

CONCLUSION ........................................................................................ 77

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
908 F.3d 765 (Fed. Cir. 2018) .......... 55

*Adenta GmbH v. OrthoArm, Inc.*,
501 F.3d 1364 (Fed. Cir. 2007) .......... 30

*Allied Erecting & Dismantling Co. v. Genesis Attachments*,
LLC, 825 F.3d 1373 (Fed. Cir. 2016) .......... 6, 7

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
262 F.3d 1258 (Fed. Cir. 2001) .......... 56

*Bieber v. Dep't of Army*,
287 F.3d 1358 (Fed. Cir. 2002) .......... 38, 72

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*,
419 US 281 (1974) .......... 45

*Ennin v. CNH Indus. Am., LLC*,
878 F.3d 590 (7th Cir. 2017) .......... 51

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) .......... 29, 34, 35

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) .......... 75

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) .......... 47, 51

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) .......... 58, 61

*In re Huang*,
100 F.3d 135 (Fed. Cir. 1996) .......... 68, 74

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .......... 6

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010) .......... 28, 35

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
790 F.3d 1329 (Fed. Cir. 2015) .......... 15

*M & K Holdings, Inc. v. Samsung Elecs. Co., Ltd.*,
985 F.3d 1376 (Fed. Cir. 2021) .......... 37

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) .......... 39, 68

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) .......... 61

*Merck & Cie v. Gnosis S.P.A.*,
808 F.3d 829 (Fed. Cir. 2015) .......... 76

*Microsoft Corp. v. FG SRC, LLC*,
No. 2020-1928, 2021 WL 2461862 (Fed. Cir. June 17, 2021) .......... 12

*Nike, Inc. v. Adidas AG*,
812 F.3d 1326 (Fed. Cir. 2016) .......... 16

*Nobel Biocare Services AG v. Instradent USA, Inc.*,
903 F.3d 1365 (Fed. Cir. 2018) .......... 30, 33, 35, 39

*Ormco Corp v. Align Tech.*,
463 F.3d 1299 (Fed. Cir. 2006) .......... 75

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993) .......... 35

*Robert Bosch, LLC v. Iancu*,
No. 2017-2122, 2019 U.S. App. LEXIS 19889 (Fed. Cir. July 3, 2019) .......... 12

*In re Sang Su Lee*,
277 F.3d 1338 (Fed. Cir. 2002) .......... 44

*Seachange Int'l, Inc. v. C-COR, Inc.*,
413 F.3d 1361 (Fed. Cir. 2005) .......... 18

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
225 F.3d 1349 (Fed. Cir. 2000) .......... 76

*SkinMedica, Inc. v. Histogen Inc.*,
727 F.3d 1187 (Fed. Cir. 2013) .......... 56

*T.H. Symington Co. v. Nat'l Malleable Castings Co.*,
250 U.S. 383 (1919) .......... 34

*Tandon Corp. v. US Int'l Trade Comm'n*,
831 F.2d 1017 (Fed. Cir. 1987) .......... 9

*Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*,
661 F.3d 1378 (Fed. Cir. 2011) .......... 55

*TransWeb, LLC v. 3M Innovative Properties Co.*,
812 F.3d 1295 (Fed. Cir. 2016) .......... 29

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
374 F.3d 1151 (Fed. Cir. 2004) .......... 34

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) .......... 14

*In re Warsaw Orthopedic, Inc.*,
832 F.3d 1327 (Fed. Cir. 2016) .......... 8

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) .......... 75

*Woodland Tr. v. Flowertree Nursery, Inc.*,
148 F.3d 1368 (Fed. Cir. 1998) .......... 32, 35

*Wyers v. Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) .......... 77

**Statutes**

35 U.S.C. § 316(e) .......................................................................................... 39

## REPLY OF APPELLANT MICROSOFT

## SUMMARY OF ARGUMENT IN REPLY

In the proceeding below, the Board agreed with Microsoft on the vast majority of the dozens of issued raised by IPA and correctly concluded that almost every challenged claim was unpatentable. As explained in Microsoft's Opening Brief ("Br."), however, the Board disagreed with Microsoft on five narrow issues and erroneously upheld the patentability of certain claims. The arguments made in IPA's brief ("IPA Br.") regarding Microsoft's appeal fail to defend the errors in the Board's determinations in those five narrow issues, and confirm that every claim of the 115 and 560 Patents is unpatentable.

1. The Board disregarded Microsoft's detailed obviousness arguments when it concluded that claims 8-10 and 63 of the 115 Patent and claim 28 of the 560 Patent were not shown to be unpatentable. The Board's decision cannot be defended, as IPA would have, by mischaracterizing Microsoft's obviousness analysis or asserting that Microsoft was required to show how the two references would be bodily incorporated into each other.

2. The Board further disregarded Microsoft's arguments against claims 29-47 of the 115 Patent merely because Microsoft had argued that the same disclosure could satisfy different phrasings of the same claim features. IPA again fails to identify any "material" differences between the relevant portions of claim 1 of the 115 Patent (found unpatentable) and claim 29 (found *not* unpatentable).

3. The Board's analysis of the requirement in claim 86 of the 115 Patent that a "facilitator" "constructs a goal satisfaction plan" limitation ignored Microsoft's complete explanation in its petition. IPA does not dispute that Microsoft's analysis for claim 86 identified Kiss's meta-agent as the "facilitator," nor that Microsoft's analysis for the "constructs a goal satisfaction plan" limitation cross-referenced an explanation of how ***that same*** meta-agent satisfied that limitation.

4. The Board erred in construing "advisory suggestion" in a manner inconsistent with the closest written description support for that term, and as a result erred in confirming claims 10 and 11 of the 560 Patent. Whether "constraints" are different than "guidance," as IPA argues, is irrelevant: the 560 Patent explains that both "constraints" and "guidance" are within the scope of "advice parameters," which is the

closest term to the claim element at issue. Because there is no dispute that the prior art discloses at least a "constraint," the Board's determinations must be reversed when the claims are correctly construed.

5. With respect to the Board's determination that claims 50, 51, and 53-55 of the 560 Patent had not been shown to be unpatentable under its construction of "computer process," IPA offers no defense of that construction whatsoever. Instead, IPA argues waiver when none exists and advances an argument under Microsoft's construction of "computer process" that concedes the prior art would satisfy such a construction. These claims are thus unpatentable as a matter of law.

For these reasons and those set forth in Microsoft's Opening Brief, the Court should reverse, or at least vacate and remand, the Board's patentability determinations regarding Claims 8-10, 29-47, 63, and 86-89 of the 115 Patent and Claims 10, 11, 28, 50, 51, and 53-55 of the 560 Patent.

## ARGUMENT IN REPLY[1]

### I. The Board Erred in Failing to Find Claims 8-10 and 63 of the 115 Patent and Claim 28 of the 560 Patent Unpatentable as Obvious.

The Board erred in concluding that Microsoft had not shown "how or why" the agent registry of Kiss would be combined with the agent registry information of FIPA97 in a way that would satisfy claims 8-10 and 63 of the 115 Patent and claim 28 of the 560 Patent. Microsoft's petitions included a detailed analysis that expressly explained "how" FIPA97's administrative functionality and exemplary practices, which included the "trigger declarations" and "process characteristics" of FIPA97's agent registry, would be included in the system of Kiss. Appx1423-1426. The petitions also demonstrated "why" such a combination was obvious, providing numerous reasons to combine the references as described in the petitions. Appx1423-1426. The Board's dismissal of this analysis provided inadequate reasoning and conflicted with the Board's finding only pages earlier in its decision that combining FIPA97—including the administrative functionality and

[1] In its reply arguments and unless otherwise stated, Microsoft cites to the record of IPR2019-00810 as representative of the record on appeal.

exemplary practices relied on for these claims—with Kiss would have been obvious. Br. 50-57. IPA's response arguments as to why Microsoft's petitions were deficient mischaracterize the petitions and misread the record.

*First*, IPA continues to mischaracterize the petition's obviousness arguments, asserting that the petition "states only that the 'techniques [in Kiss and FIPA97] are combined.'" IPA Br. 67 (quoting Appx1423). The petitions say much more than that. For example, the full sentence that IPA misquotes reads: "Where the two systems disclose ***analogous functionality***, such as facilitating cooperation ***and agent registry***, their techniques are combined, as a Skilled Artisan would understand that to be ***an efficient and common sense way to implement the combined system*** in order to ***obtain the benefits of both***, and therefore be motivated to do so." Appx1423.[2] That sentence is in addition to all of the other arguments and evidence provided by Microsoft and identified in its opening brief. *See* Br. 52-55 (citing and quoting from Appx1423-1426; Appx1455-1457). IPA ignores this analysis and additional evidence.

[2] All emphasis is added unless otherwise noted.

Nor was Microsoft required to explain every implementation detail to demonstrate the obviousness of a combination. *Allied Erecting & Dismantling Co. v. Genesis Attachments*, LLC, 825 F.3d 1373, 1381 (Fed. Cir. 2016). An ordinary artisan has ordinary creativity, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007), and Microsoft's expert Dr. Lieberman provided unrebutted testimony, accepted by the Board, that a person of ordinary skill in the art could have made the combination without undue experimentation. *See* Appx83-94 (crediting, *e.g.*, Appx7227-7242(¶¶217-231)).

*Second*, IPA offers no coherent defense of the Board's finding that combining the registries meant a "different (or additional combination)" was at issue. *See* IPA Br. 68. IPA asserts that "the reasons for combining the two references generally do not address the failure to demonstrate the combination of *the agent registry data structures*" (IPA Br. 67), but does not and cannot contest that Microsoft's reasons for combining the two references identified that combining the two systems would require combining "***analogous functionality***, such as facilitating cooperation ***and agent registry***" in order "***obtain the***

***benefits of both***," systems (Appx1423), a conclusion the Board expressly agreed with (Appx94).

Moreover, to the extent IPA is arguing that the petition was required to show the exact data structures the combined system would use, that is not so. The claims do not recite such structures beyond an "agent registry," and "bodily incorporation" is not the standard for obviousness. *Allied Erecting & Dismantling,* 825 F.3d at 1381.

*Finally*, IPA faults Microsoft for failing to explain this issue on reply. IPA Br. 68.[3] But Microsoft explained the basis of its combination in the petition, as explained at detail in its opening brief. *See* Br. 52-55. Moreover, Microsoft ***did*** explain this issue in detail on reply. *See* Appx2029-2030 (explaining how FIPA's "administrative functionality" and "exemplary practices" would be combined with Kiss). That the Board ignored this explanation as to how Microsoft's petition arguments presented a compelling case of obviousness merely demonstrates that

[3] IPA's arguments repeatedly contradict each other only pages apart. *E.g.* § VII.A infra. Here, IPA's assertion that "Microsoft had the opportunity on Reply to provide the how and why … and came up with nothing" (IPA Br. 68) stands in marked contrast with its argument only pages later that "the Board appropriately rejected attempts by Microsoft to resuscitate on Reply because Microsoft should have raised any basis of invalidity in its original Petition" (IPA Br. 70-71).

the Board failed to provide a sufficient basis for its decisions. *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1335 (Fed. Cir. 2016).

## II. The Board Erred By Refusing To Consider Petitioner's Arguments Regarding the Obviousness of Claim 29 of the 115 Patent and its Dependents Claims 30-47.

The Board's refusal to consider Microsoft's arguments regarding claim 29 of the 115 Patent was legal error. The language at issue in claims 1 and 29, although slightly different, is drawn to the same functionality: satisfying a goal by dividing it into sub-goals and matching agents to sub-goals using an agent registry. Appx1326(29:25-43); Appx1327(31:59-32:30). Because Microsoft relied on the same prior art disclosure to satisfy the analogous claim language in both claims 1 and 29, it cross-referenced its analysis from claim 1 for portions of claim 29. *E.g.*, Appx1427-1449; Appx1460-1464. There is no difference between the relevant claim language that is material to the petitions' patentability arguments, a point that Microsoft had explained in its reply and the Board erroneously ignored. *See* Appx2019-2027.

IPA again utterly fails to identify any "***material*** differences" between the relevant language in claims 1 and 29. *See* IPA Br. 69-72 (asserting that "material differences" exist but identifying none);

Appx1572 (IPA's preliminary response grouping its claim 29 arguments with claim 1); Appx1845-1847 (IPA's response identifying no specific "material differences"). IPA points to no specific limitation in claim 29 that would require a different proof than the analogous limitation in claim 1, nor any limitation in claim 29 that Microsoft's petition analysis would fail to demonstrate would have been satisfied by the prior art.

Nor does IPA defend the Board's interpretation of the issue as a matter of claim construction. The issue was not, as the Board found, whether the claims were theoretically patentably distinct. *See* Appx152-157. As Microsoft explained in its opening brief, "two claims which read differently can cover the same subject matter," *Tandon Corp. v. US Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987), and Microsoft's petition analysis, if the Board had considered it, demonstrated how the prior art satisfied the slightly differences language of the respective claims. Other than repeating the Board's conclusion, IPA offers no response as to why the disclosure identified by Microsoft for claim 1 would not similarly invalidate claim 29. *See* IPA Br. 69-72.

That Microsoft's reply explained this issue and how its claim 1 analysis satisfied the analogous language of claim 29 in no way "tacitly

conceded" that material differences existed between the claims. *See* IPA Br. 70. Microsoft's reply arguments were clear: there were no differences between the claims that were material to its unpatentability arguments. Appx2019-2027. That IPA has again failed to identify any differences material to Microsoft's unpatentability arguments—despite every incentive to do so in its response on appeal—merely confirms that the Board's blanket refusal to consider Microsoft's arguments was error.

## III. The Board Erred in Failing to Find Claim 86 of the 115 Patent and its Dependents Unpatentable as Obvious.

The Board wrongly concluded that Microsoft's petition had not adequately explained how the facilitator agent of claim 86 "construct[s] a goal satisfaction plan." Appx307-309. Microsoft's petition was clear: the analysis of claim 86 identified the "meta-agent" of Kiss as corresponding to the claimed "facilitator agent," and cited the analysis of claim 1 describing how that same meta-agent "construct[s] a goal satisfaction plan." Appx2706-2708 (citing Appx2693-2697). That the Board found this same analysis persuasively satisfied the identical claim language of claim 61—a finding IPA has not separately

appealed—demonstrates the error of the Board's claim 86 findings. *See* Appx789-790; Br. 36-37.[4]

*First*, IPA offers no response to Microsoft's explanation as to how its petition fairly demonstrated how the facilitator agent of claim 86 "construct[s] a goal satisfaction plan." *See* IPA Br. 72-73. Microsoft's petition's analysis for claim 86 must be considered as a whole, and the petition's earlier analysis for claim 86 identified Kiss's "meta-agent" as the facilitator. Appx2706-2708. The cross-referenced portion of claim 1's analysis explained how Kiss's meta-agent "construct[ed] a goal satisfaction plan." Appx2693-2697. That the Board found Microsoft's cross-reference insufficient only demonstrates that it did not consider the arguments actually advanced by Microsoft's petition. *See* Br. 64-66. IPA's argument fails to rebut this point, makes no mention of "meta-agent," and can only be read as an express concession.

---

[4] If this Court affirms the Board's unpatentability findings by rejecting IPA's arguments in its cross-appeal, then the Board's findings for claim 61—which considered the ***same*** analysis as Microsoft pointed to for claim 86—will be final. In such a case, the correctness of the Board's decision for claim 61 would demonstrate the incorrectness of the Board's decision for claim 86.

*Second*, Microsoft's position imposes no obligation on the Board beyond the obligation, which already exists, for the Board to fairly consider the arguments presented in Microsoft's petition. *See* IPA Br. 74. Microsoft's argument regarding claim 61 of the 115 Patent—a patent claim found unpatentable under the same analysis as was provided for claim 86—conclusively demonstrates that if the Board had actually considered Microsoft's arguments then claim 86 would have been unpatentable. *See* Br. 66-67; *Robert Bosch, LLC v. Iancu*, No. 2017-2122, 2019 U.S. App. LEXIS 19889, at *6 (Fed. Cir. July 3, 2019) (non-precedential). Instead, the Board disregarded one of Microsoft's arguments because it was cross-referenced, without considering whether the cross-referenced argument, in context with the remaining analysis provided for claim 86, provided sufficient explanation for why claim 86 was obvious. The Board's failure to consider Microsoft's arguments was error.[5]

---

[5] IPA's implied disparagement of Microsoft and its counsel through reference to *Microsoft Corp. v. FG SRC, LLC*, No. 2020-1928, 2021 WL 2461862, at *4 (Fed. Cir. June 17, 2021), *see* IPA Br. 73, is both irrelevant—the issues there are distinct from the issues here—and telling. Where one's substantive arguments are sufficient, disparagement of one's opponent is unnecessary.

## IV. The Board Erred in Failing to Find Claims 10 and 11 of the 560 Patent Unpatentable as Obvious.

The Board wrongly determined that Microsoft had failed to demonstrate the obviousness of claims 10 and 11 of the 560 Patent. Appx1099-1100. The only arguable specification support for the "***advisory*** suggestion" claim language is the disclosure of "***[a]dvice*** parameters," which the 560 Patent explains "preferably give constraints." Appx1356(16:22-23). The Board's implicit construction of "advisory suggestion" as excluding "constraints" is thus legal error. IPA's arguments in defense of the Board's construction fail.

IPA focuses on arguing that "constraints" are different from "guidance," IPA Br. 74-75, but that is a red herring. Both parties rely on the same sentence of the specification to interpret the claimed advisory suggestions": "***[a]dvice parameters*** preferably give constraints ***or*** guidance to the facilitator in completing and interpreting the goal." Appx1356(16:22-41). The 560 Patent thus clearly discloses that "constraints" and "guidance"—even if they are different things—are both examples of "[a]dvice parameters," and therefore of the claimed "advisory suggestions." *Id.* Without highly persuasive intrinsic evidence to the contrary, which is absent here, the claim should have been

construed to cover them both. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). That is sufficient to reverse the Board's analysis.

IPA offers no cogent defense of the Board's compounded error when it concluded that numerical/quantitative constraints cannot constitute "advisory suggestions." Appx1099-1100. IPA states that the Board was "not required to abandon common sense in reading patents" (IPA Br. 76), but that is a *non sequiter* when the patent never divides its advice parameters into quantitative and non-quantitative parameters. *See* Appx1356(16:22-41). Common sense instead confirms that constraints can be non-quantitative (*e.g.*, "Don't walk to the store when it's raining") and guidance can be quantitative (*e.g.*, "You should buy 100 shares when the price reaches $100.00"). The Board's mistaken quantitative requirement and IPA's non-defense of that approach further confirms the legal error of the Board's construction.

## V. The Board Erred in Failing to Find Claims 50, 51, and 53-55 of the 560 Patent Unpatentable as Obvious.

The Board's construction of "computer process" to mean "a process that runs or executes one or more computer programs" was legal error. *See* Appx1013-1016. The intrinsic and extrinsic evidence fail to support

such an interpretation and instead support Microsoft's construction, which is consistent with the patent specification and based on a computer dictionary definition of "computer process." Appx5640; Appx1349(2:35-39); Appx1350(3:64-4:11). The Board's finding that the petition "fails to address the language of claim 50" under Microsoft's proposed construction ignored the petition's analysis of precisely that issue. *See* Appx1109.

There is no basis to conclude that Microsoft waived this argument. *See* IPA Br. 76-77. Microsoft proposed its construction in its petition, Appx5640, and its reply explained that "because ***IPA does not assert any different outcome based on its proposed construction***, and Petitioner shows how the prior art discloses 'computer process[es]' under either construction, the term is not relevant to the resolution of any dispute and need not be construed." Appx4939-4940.[6] In the final decision, the Board determined that the outcome ***was*** different based on the construction, and made findings under IPA's construction. Appx1013-1016. In the same reply brief that IPA identifies as the

---

[6] IPA's citation to *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 790 F.3d 1329, 1341 (Fed. Cir. 2015) is thus inapposite; there the relevant construction was first proposed only after trial.

supposed source of waiver, Microsoft argued that "IPA's construction is unsupported by the intrinsic record and contrary to the plain and ordinary meaning of '*computer process(es)*,'" *i.e.*, the same argument Microsoft advances on appeal. *See* Appx4939. There is no basis to find waiver where Microsoft actually litigated the issue and preserved its disagreement on reply. *See Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1342 (Fed. Cir. 2016).

IPA's arguments on the merits fare no better. *First*, IPA offers no defense of the Board's construction whatsoever. It skips straight from arguing that Microsoft's argument was waived to arguing that the Board's decision was correct under Microsoft's construction. *See* IPA Br. 76-78. It offers zero response to Microsoft's opening brief arguments that the Board's construction was legal error and cannot be maintained. That IPA cannot defend the Board's construction further confirms the error of that construction.

*Second*, IPA's arguments in support of the Board's alternative finding under Microsoft's construction instead concedes Microsoft's point. As explained in Microsoft's opening brief, the relevant petition

pointed to FIPA97's Figure 2 as disclosing a "plurality of … agent registries":




**Figure 2 — Agent Platform Reference Model Fragment**

Appx5684-5685 (excerpting Appx7536).

In an argument IPA never advanced below, IPA now disputes that agent registries $DF_Y$ and $DF_Z$ are located within "separate computer processes" because they are both within AP2, but ***it does not dispute*** that $DF_X$ and $DF_Y$ are "agent registries" within "separate computer processes," *i.e.*, $DF_X$ is within AP1 and $DF_Y$ is within AP2. *See* IPA Br.

78.[7] That the prior art discloses something allegedly outside the scope of the claim is irrelevant if it ***also*** discloses something admittedly inside the scope of the claim. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1380 (Fed. Cir. 2005).

In any event, IPA ignores the actual combination found obvious by the Board. Appx899-909. In a portion of its decisions that IPA does not separately contest on appeal, the Board agreed with Microsoft that Kiss and FIPA97 would be combined as described in the annotated version of Kiss's Figure 21 provided by Microsoft's expert, which identifies each $DF_X$/$DF_Y$/$DF_Z$ being resident on different hardware platforms connected through the Internet or an intranet:

[7] IPA's briefs before the Board never argued whether $DF_Y$ and $DF_Z$ are located within "separate computer processes," only that Figure 2 "does not provide any teaching with respect to the use of multiple computer processes." *See* Appx4813-4815; Appx5092-5094.




*Fig. 21*

Appx8722-8727; Appx907 (quoting Appx8727). IPA offers no defense of how the Board could conclude that these separate computing platforms could somehow still constitute a single "computer process."

Because IPA does not defend the Board's construction and concedes that Microsoft's prior art discloses the limitation at issue under Microsoft's construction, the Board's decision on this point must be reversed.

## RESPONSE OF MICROSOFT IN CROSS-APPEAL

## STATEMENT OF THE ISSUES IN CROSS-APPEAL

1. Whether substantial evidence supports the Board's determination that FIPA97 is prior art to the 115 and 560 Patents.

2. Whether substantial evidence supports the Board's determination that the prior art disclosed a "goal satisfaction plan" that "uses reasoning" as claimed.

3. Whether substantial evidence supports the Board's determination that the prior art disclosed a "facilitator" as claimed.

4. Whether substantial evidence supports the Board's determination that the prior art disclosed an "interagent communication language" (ICL) as claimed.

5. Whether substantial evidence supports the Board's determination that IPA had failed to demonstrate sufficient nexus between any putative objective indicia of nonobviousness and the claims of the 115 and 560 Patents.

## STATEMENT OF THE CASE AND THE FACTS IN CROSS-APPEAL

IPA cross-appeals from the Final Written Decisions in IPR2019-00810, -811, -812, -813, -814, -835, -836, and -837, which collectively

held that Claims 1-7, 11-28, 48-62, and 64-85 of the 115 Patent and Claims 1-9, 12-27, 29-49, and 52 of the 560 Patent are unpatentable.

Microsoft does not agree with many of IPA's characterizations of the proceedings before the Board. *See* IPA Br. 8-20. Specifically, as discussed in more detail below, Microsoft disagrees with IPA's characterizations of the proceedings and evidence relevant to (1) the Board's determination that FIPA97 was prior art to the 115 and 560 Patents, (2) the Board's determinations that the prior art disclosed the claimed "goal satisfaction plan" that "uses reasoning," "facilitator," and "interagent communication language," and (3) the Board's determination that IPA had failed to demonstrate sufficient nexus between any putative objective indicia of nonobviousness and the claims of the 115 and 560 Patents.

## SUMMARY OF ARGUMENT IN CROSS-APPEAL

IPA's cross-appeal challenges to the Board's Final Written Decisions fail. The Court should affirm the Board's determinations that Claims 1-7, 11-28, 48-62, and 64-85 of the 115 Patent and Claims 1-9, 12-27, 29-49, and 52 of the 560 Patent are unpatentable as obvious.

1. The Board's determination that the FIPA97 reference was prior art to the 115 and 560 Patents is supported by substantial evidence. IPA no longer disputes that documentation entitled FIPA97 Version 1.0 was published in 1997, well before the priority date of the 115 and 560 Patents, and further does not dispute that Microsoft's declarant, Dr. Finin, was personally involved in that publication process. IPA's only remaining assertion is that one specific detail from Dr. Finin's testimony—that Exhibits 1006-1012 in these proceedings represent the same FIPA97 Version 1.0 that was published in 1997—allegedly lacks sufficient corroboration. The corroboration requirement, however, is amply satisfied where, as here, the consistent testimony of multiple declarants and more than sixty documentary exhibits all tell the same story. There is no requirement that every sentence in Dr. Finin's declaration be independently sourced in documentary evidence.

Regardless, the Board's determination relied on significantly more than the bare testimony of Dr. Finin, such as the information contained in the documents themselves and the documentary and testimonial evidence as a whole. When the law is applied correctly and the evidence considered, the Board's findings are well supported.

2. The Board's determination that Microsoft's prior art discloses a "goal satisfaction plan" that uses "reasoning" is supported by substantial evidence. Initially, IPA's assertion that the Board overlooked its "reasoning" argument is contradicted by the Board's careful consideration of that argument and the section in IPA's appellate brief challenging that consideration. On the merits, the Board more than adequately explained its reasoning as to why Kiss's disclosure of meta-agents formulating parallel sub-plans and iterative and recursive procedures satisfies the "reasoning" requirement.

3. The Board's determination that Microsoft's prior art discloses the claimed "facilitator" is supported by substantial evidence. IPA claims the Board disregarded an argument on this point, but IPA never made that argument before the Board. IPA had argued that the claimed "facilitator" could not be satisfied by a mere "meta-agent," which the Board addressed by noting that Microsoft had not done that: Microsoft had relied on a combination of a meta-agent and a facilitator layer. IPA's new argument on appeal that the claimed "facilitator" cannot *include* a "meta-agent" is both waived and wrong. Nothing in the

specification or prosecution history of the 115 and 560 Patents could warrant the ambiguous negative limitation that IPA proposes.

4. The Board's determination that Microsoft's prior art discloses an "Interagent Communication Language (ICL)" with "parameter lists" that "refine … events" is supported by substantial evidence. IPA disputes the correctness of the Board's overall determination, but does not dispute the Board's construction of "refine … events" as encompassing "affecting the meaning of the events," nor does it dispute the factual accuracy of the Board's conclusion that the prior art discloses functionality within the scope of that construction. Whatever complaints IPA has against the Board's decision as inconsistent with the specification and prosecution history are thus irrelevant in light of the Board's non-appealed construction, but they are also wrong. The Board's findings are consistent and IPA's arguments erroneous.

5. The Board's determination that IPA had failed to demonstrate any legally sufficient nexus between its putative secondary considerations of nonobviousness and the claims of the 115 and 560 Patents is supported by substantial evidence. The Board correctly determined that IPA had not demonstrated that Apple's Siri voice

assistant application practiced the challenged claims because IPA had relied on suppositions and assumptions, not source code or Siri-specific technical specifications. And even if the Siri application fit within the challenged claims, IPA had failed to establish a nexus to any acclaim or success of Siri given the undisputed importance of features of Siri not found in the patent claims at issue here, *e.g.*, Siri's "conversational interface." The Board correctly determined that IPA failed to demonstrate the relevance of its putative objective evidence.

## ARGUMENT IN CROSS-APPEAL

### VI. Substantial Evidence Supports the Board's Determination that FIPA97 Is Prior Art to the 115 and 560 Patents.

Substantial evidence supports the Board's determination that FIPA97 (filed as Exhibits 1006-1012 in the proceedings below) is prior art to the 115 and 560 Patents. In support of this determination, the Board made extensive findings of fact with over 25 pages of analysis, drawing from the testimony of multiple declarants and more than sixty documentary exhibits of evidence provided by Microsoft to demonstrate

the prior art status of FIPA97. Appx874-899.[8] Throughout its analysis, the Board repeatedly credited the factual testimony of Dr. Timothy Finin, "a professor who ha[d] personal knowledge of FIPA's activities and the development process of FIPA97." Appx875-876; *see* Appx875-898 (relying on Dr. Finin's "extensive" testimony throughout). Indeed, Dr. Finin not only had personal knowledge of the standard called "FIPA," he was personally involved in drafting the prior art FIPA97 document relied on in the petitions below. As he testified:

> I was personally involved with the development of the document herein referred to as FIPA97 and have personal knowledge pertaining to its development, availability, and maturity. I attended several FIPA meetings through the development of FIPA97 and was further appointed a FIPA Fellow in 1997. My testimony in this declaration is therefore based off my personal knowledge of agents, agent communication languages, and specifically FIPA97.

Appx8572-8573(¶2).

After providing a detailed overview of its factual findings regarding the evidence, Appx876-888, the Board structured its analysis

---

[8] In responding to IPA's cross-appeal arguments and to maintain consistency with IPA's brief, Microsoft cites to the record of IPR2019-00835 as representative unless otherwise noted.

of the parties' arguments into two parts. First, it concluded that the evidence demonstrated that FIPA97 "was disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the art, exercising reasonable diligence, could locate it." Appx888-893. Second, it concluded, in light of the evidence of record and Dr. Finan's direct testimony in support of the point, that the documents filed as Exhibits 1006-1012 represented the same publication, FIPA97 Version 1.0, that was released and publicly available during the relevant timeframe. Appx893-899.[9]

IPA concedes that "printed versions of the FIPA97 Version 1.0 software specification … were publicly available," and are thus prior art the 115 and 560 Patents. *See* IPA Br. 20. Its challenge on appeal against the prior art status of FIPA97 depends entirely on attacking Dr. Finin's testimony that Exhibits 1006-1012 represent the same FIPA97 document that was published. *See* IPA Br. 23-36. This challenge to the sufficiency of Dr. Finin's testimony is misplaced. *First*, substantial

[9] IPA falsely claims that the Board devoted "only two paragraphs" to whether Exhibits 1006-1012 represent the same FIPA97 shown to be prior art. *See* IPA Br. 23. The Board began its analysis of that point on page 54 of the decision and concluded on page 60, providing 12 paragraphs of analysis in support. Appx893-899.

evidence supports the Board's conclusion that Dr. Finin's testimony was well-corroborated by record evidence and IPA's arguments to the contrary fail as a matter of law. *Second*, IPA's challenges against this evidence distort the record and this Court's precedent and must be rejected.

### A. Substantial Evidence Support's the Board's Determination that Dr. Finin's Testimony Is Corroborated.

#### 1. IPA Misapplies the Corroboration Requirement.

IPA's attacks against Dr. Finin's testimony as uncorroborated rely on an erroneous application of the corroboration requirement. "Generally, '[c]orroboration is required of any witness whose testimony ***alone*** is asserted to invalidate a patent.'" *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1374 (Fed. Cir. 2010) (quoting *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004)). Here, there is no dispute that the Board relied on significantly more than Dr. Finin's testimony alone to determine that FIPA97 (as filed in Exhibits 1006-1012) constituted prior art to the 115 and 560 patents. The Board relied on the consistent testimony of multiple declarants and more than sixty documentary exhibits of evidence, Appx874-899, and IPA freely concedes that "[t]he Board …

correctly [found] that *multiple* versions of FIPA97 Version 1.0 specification had been released" during the critical period. *See* IPA Br. 24; *cf Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999) (because "the ***sole basis*** to support a determination of a prior public use was [the witness's] testimony concerning his own work," concluding "there was no evidence corroborative of this testimony at all"). Dr. Finin's testimony does not exist in a vacuum.

IPA's argument focuses on whether one particular element of Dr. Finin's testimony is corroborated instead of, as required, whether his testimony is corroborated as a whole. *See* IPA Br. 26-28. This Court has "repeatedly rejected an element-wise attack on corroboration of oral testimony." *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1302 (Fed. Cir. 2016) (citing, *e.g.*, *Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1348 (Fed. Cir. 2013) (characterizing as "misplaced" an argument that a particular claim feature in oral testimony was not separately evidenced)). Sufficiency of corroboration is determined though a "rule of reason" analysis which "involves an assessment of the totality of the circumstances including an evaluation of all pertinent

evidence." *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1372 (Fed. Cir. 2007) (citing *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998)).

2. Dr. Finin's Testimony Is Well-Corroborated.

When the law of corroboration is correctly applied, substantial evidence supports the Board's conclusion that Dr. Finin's testimony was well-corroborated by the evidence of record. Appx45-57; *Nobel Biocare Services AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1378 (Fed. Cir. 2018) ("Sufficiency of corroboration is a question of fact.").

Dr. Finin testified that "Exhibits 1006-1012 are copies of the original 'Initial' version of FIPA97" and "were available online, free for anybody to access by October of 1997 …." Appx8584-8586(¶21); Appx8593(¶34) ("I have personal knowledge of the document enclosed in Exhibits 1006-1012, and can confirm they are the same documents that were released at the October 10th 1997 FIPA meeting and were available to the public at that time."). His testimony regarding FIPA97's public accessibility is corroborated by a variety of exhibits and evidence. Appx8584-8593(¶¶21-34) (discussing at least 20 exhibits as confirming his public accessibility recollection). For example, it is undisputed that

Exhibits 1006-1012 are the same FIPA97 currently available on FIPA's home page. Appx886; Appx8584-8586(¶21). The Board credited testimony from both Dr. Finin and Dr. Lieberman that they recalled FIPA 97 Version 1.0 being available on the FIPA website in the 1997-1998 timeframe and had accessed it in late 1997. Appx882; Appx8691(¶146); Appx8584-8586(¶21). And IPA does not dispute that hardcover versions of FIPA97, which share the same table of contents as Exhibits 1006-1012, were published in late 1997. *Compare* Appx7520-7521; Appx7566-7570; Appx7659; Appx7699-7700; Appx7741; Appx7760; Appx7782-7783 *with* Appx9022-9039; Appx9040-9043.

It is further undisputed that Dr. Finin was a FIPA Fellow invited to provide "high quality and independent advice to FIPA," submitted comments on drafts of FIPA97, and had personal knowledge of FIPA's activities and development processes. Appx875-876 (quoting Appx9142); Appx880. IPA identifies no basis to conclude that Dr. Finin's undisputed knowledge of FIPA's activities and development processes is insufficient to explain his testimony that, despite the 20-year time gap,

other versions of FIPA97 contained only minor formatting and clerical edits. Appx896; Appx8588-8589(¶¶24-25).[10]

The Board repeatedly credited Dr. Finin's testimony throughout its public accessibility analysis. Appx876-898 (citing and crediting Dr. Finin's testimony 80+ times). IPA does not challenge any aspect of these opinions on appeal other than his testimony that Exhibits 1006-1012 are the same FIPA97 that was made publicly accessible, which confirms that his opinion is reliable as a whole.

Moreover, the Board expressly determined that Dr. Finin's testimony that FIPA97 was publicly accessible was "corroborated by the evidence in the record of the facts and circumstances surrounding the development and release of" FIPA97 (Appx897-898), facts and circumstances that IPA nowhere challenges and concedes on appeal. Nor does IPA dispute that Dr. Finin was a key participant in FIPA at the time and would have had significant personal knowledge of the facts and circumstances surrounding FIPA97's publication. *See Woodland*, 148 F.3d at 1371 (considering the "relationship between the

---

[10] The record does not reflect any attempt by IPA to objectively verify its speculation that more than "minor" or "clerical" edits exists between Exhibits 1006-1012 and the hardcover versions of FIPA97.

corroborating witness and the alleged prior user" and their "familiarity with the subject matter").

On the specific issue of whether Exhibits 1006-1012 represent FIPA97 as it was available during the critical period, the Board determined that Dr. Finin's testimony was corroborated by "the evidence discussed above, including the identification of Exhibits 1006-1012 on their cover pages or elsewhere as FIPA 97 Version 1.0 with a date of October 10, 1997." Appx898. That evidence "discussed above" included the content and dates within Exhibits 1006-1012, records from the Internet Archive, hardcover copies of FIPA97, and extensive publication details regarding FIPA97, all of which were consistent with and corroborated Dr. Finin's testimony. Appx893-897 (citing 16+ documentary exhibits in support of its findings). IPA addresses only a handful of this evidence in its brief, which as a whole provides the Board more than substantial evidence to find Dr. Finin's testimony sufficiently corroborated. *See Nobel Biocare*, 903 F.3d at 1378 ("Circumstantial evidence can be sufficient corroboration.").

3. IPA's Contrary Arguments Fail.

IPA's other arguments against the corroboration of Dr. Finin's testimony fail. *First*, Patent Owner's cases where only oral evidence was at issue are inapposite. *See* IPA Br. 29; *T.H. Symington Co. v. Nat'l Malleable Castings Co.*, 250 U.S. 383, 386 (1919) ("Here the evidence was oral. No model, drawing, or kindred exhibit was produced."); *The Barbed Wire Patent*, 143 U.S. 275, 284 (1892) (considering prior art "proven only by oral testimony"). Here, the Board cited to and relied on 60+ documentary exhibits including the FIPA97 documents themselves. In *Finnigan*, the supporting evidence "was relevant only to whether [the alleged prior inventor's] experiments were sufficiently *public* to constitute public use" and "therefore not corroborative of [the alleged prior inventor's] *use of the claimed invention*." *Finnigan*, 180 F.3d at 1369. Here, however, Dr. Finin's testimony, the FIPA97 exhibits' date stamps, and the other evidence of record go to the prior art status of Exhibits 1006-1012, the precise issue contested by IPA. Finally, unlike in *TypeRight* where the document in question was undated, here the FIPA97 exhibits are dated. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004).

This Court has found witness testimony like Dr. Finin's to be corroborated in situations analogous to these, recognizing "corroboration of a document's date of public accessibility and the testimony of multiple witnesses, is factually distinguishable [from *The Barbed Wire Patent*, *Finnigan*, and *Woodland*]." *Nobel Biocare*, 903 F.3d at 1379, *as amended* (Sept. 20, 2018). As in *Nobel Biocare*, that the documentary evidence here "has a date … printed on it" that "match[es] the date the witnesses testified it was publicly accessible constitutes corroboration of public accessibility as of that date." *Id.* at 1379–1380; *see also Lazare Kaplan*, 628 F.3d at 1375 (finding even undated documentary evidence can corroborate testimony when consistent with such testimony and other evidence).

*Second*, IPA's argument that Exhibits 1006-1012 cannot corroborate Dr. Finin's testimony because his testimony is relied on to "validate" the exhibits is inapposite. *See* IPA Br. 32. Documents do not require corroboration, and the dated FIPA97 exhibits speak for themselves. *See Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993) (finding corroboration "is not necessary to establish what a physical exhibit before the board includes"). Moreover, as explained above the

Board relied on significantly more than Exhibits 1006-1012 to corroborate Dr. Finin's testimony, and considered the evidence as a whole in determining that those exhibits represented prior art FIPA97.

Thus, substantial evidence supports the Board's determination that Dr. Finin's testimony is corroborated, which is fatal to IPA's public accessibility arguments on appeal.

### B. The Board's Public Accessibility Determination is Supported by Substantial Evidence Regardless of Dr. Finin's Testimony.

Dr. Finin's testimony was not the sole evidence relied on by the Board when determining that Exhibits 1006-1012 represented the FIPA97 publication that was publicly available during the relevant timeframe. Appx893-897. The additional substantial evidence cited and relied on by the Board supports its public accessibility determination for FIPA97 regardless of Dr. Finin's testimony.

First and foremost, the Board determined that the "October 10, 1997" date on the cover pages of portions of FIPA97 supports that Exhibits 1006-1012 represent the same "FIPA 97 Version 1.0 as published on the FIPA website in late 1997," concluding that those dates are "evidence tending to show that FIPA97 is identical to FIPA 97

Version 1.0." Appx894. This evidence is consistent with the undisputed findings regarding the publication of FIPA 97 Version 1.0 and forms "part of the totality of evidence offered by Petitioner to establish public accessibility" that the Board found persuasive. Appx894; *see M & K Holdings, Inc. v. Samsung Elecs. Co., Ltd.*, 985 F.3d 1376, 1380–83 (Fed. Cir. 2021).

Further, the Board found that the existence of multiple published versions of FIPA 97 Version 1.0 ***supports*** its conclusion that Exhibits 1006-1012 represent FIPA97. Appx895-896. The Board determined that the evidence, including documentary evidence, demonstrated that "FIPA released a version of FIPA 97 Version 1.0 on October 10, 1997, and made it available on the FIPA website soon thereafter," and that "any earlier versions of the specification … were drafts made available for public comment." Appx895 (citing Appx4945; Appx7983; Appx9049; Appx9174-9175; Appx9228; Appx9230). Additionally, the Board determined that the book version published later in November 28, 1997 "corroborates … that FIPA's activities and release of the FIPA specification were known in the art." Appx896 (citing Appx9026). In other words, that every other version of FIPA 97 Version 1.0 identified

by IPA was published and publicly accessible supports the conclusion that Exhibits 1006-1012 were likewise published and publicly accessible.

At its core, IPA's argument depends on a baseless assumption that some version of FIPA97 might have been "in existence" but "not shown to be publicly available." *See* IPA Br. 26. IPA offers no evidence in support of such naked speculation and does not contest the ample evidence of record that versions were publicly accessible during the relevant time period.

Moreover, IPA made that argument below and the Board rejected it based on a mountain of documentary and testimonial evidence, including the testimony of Dr. Finin that the Board expressly found to be credible. Appx881-884; Appx895-896 (determining "that any earlier versions of the specification … were drafts made available for public comment."). This Court does not reweigh such factual determinations. *Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

IPA's complaint that the Board criticized it for failing to provide any countervailing evidence in no way shifted the burden of proof to IPA. *See* IPA Br. 32-33. Patentability in a PTAB proceeding is

determined by a preponderance of the evidence, 35 U.S.C. § 316(e), and the Board's observation that IPA offered none to counteract Microsoft's evidence is entirely dissimilar from the situation in *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1378, 1381 (Fed. Cir. 2016). Indeed, this Court in *Nobel Biocare* made similar observations to those criticized by IPA, noting "[n]o other basis for the March 2003 date [on the document, besides public accessibility at that time,] has been suggested by" the patent owner. *Nobel Biocare*, 903 F.3d at 1376. The Court further noted there that the patent owner "points to no evidence that ABT ever distributed the ABT Catalog with an expectation that it would be kept confidential or not disseminated." *Id.* at 1377. Similarly here, the Board did not shift the burden to IPA but rather correctly found Microsoft's arguments supported by record evidence and Patent Owner's proffered explanations unsupported.

For the foregoing reasons, substantial evidence supports the Board's determination that FIPA97 is prior art.

## VII. Substantial Evidence Supports the Board's Determination that the Prior Art Discloses a "Goal Satisfaction Plan" that Uses "Reasoning."

Certain claims of the 115 and 560 Patents recite performing activities in relation to a "goal satisfaction plan" that uses "reasoning." IPA had previously proposed a construction of "goal satisfaction plan"—"a plan for the satisfaction of a complex goal expression in an optimal or near-optimal manner that is consistent with any advice parameters or constraints"—that the Board rejected in favor of that term's plain meaning: "a plan for satisfying a goal." Appx854.

To satisfy the claimed "goal satisfaction plan," the Board agreed with Microsoft's argument that Kiss disclosed meta-agents "formulat[ing] a goal statement for the problem-solving phase of the process" and then "formulat[ing] a solution plan for the problem." Appx922; Appx4426. This functionality is illustrated in Figures 8-20 of Kiss, which discloses constructing an agenda by adding tasks to an agenda (*i.e.*, constructing a "satisfaction plan") for satisfying a user request (*i.e.*, a "goal"). Appx922; Appx4426. Microsoft further explained, and the Board agreed, that Kiss uses inferencing schemes (*i.e.*, "reasoning") to "formulate dynamic solution plans and to allocate tasks

to agents … to determine and fulfill sub-goal requests." Appx925; App4426; Appx4428-4431. During prosecution, the examiner pointed to this same disclosure in Kiss as satisfying these requirements. Appx6361. On appeal, IPA does not dispute the Board's construction of "goal satisfaction plan" or whether the relevant disclosure from Kiss satisfies that term. *See* IPA Br. 37-44.

IPA's "reasoning" arguments on appeal misread the Board's decision and analysis to find error where none exists. First, the Board properly considered IPA's "reasoning" arguments and the claims as a whole, as evidenced by IPA's own arguments against the Board's consideration of the merits of those arguments. Second, the Board provided reasoned bases for its conclusion that Kiss's functionality was performed using "reasoning."

### A. <u>The Board Properly Considered IPA's "Reasoning" Arguments and the Claims as a Whole.</u>

The Board properly considered IPA's argument that Kiss's functionality fails to use "reasoning" as claimed. Appx922-923; Appx925. The error in IPA's argument to the contrary is readily apparent from the Board's final decision, which devotes an entire

section entitled "using reasoning" to respond to IPA's allegedly un-responded-to argument. Appx925.

To be clear, the argument that IPA claims was ignored by the Board is the assertion "that Kiss does not teach the claimed 'goal satisfaction plan' because Kiss does not disclose 'the use of any reasoning.'" IPA Br. 41-42 (quoting Appx922-923). Microsoft had previously identified Kiss's solution plan as satisfying the claimed "goal satisfaction plan," Appx922; Appx4426, so IPA's argument was that Kiss allegedly does not disclose "the use of any reasoning" with respect to constructing the solution plan. *See* Appx4827-4828. The argument that the Board responded to on page 86 of its decision, however, was precisely that argument: "Patent Owner contends that the 'solution plan' of Kiss is not constructed by 'using reasoning' …." Appx925 (quoting Appx4828). Thus, the Board expressly responded to IPA's "reasoning" argument.

The Board also expressly recognized the relationship between the "reasoning" and "goal satisfaction plan" limitations: "In claim 1, both aspects of the goal satisfaction plan—determining sub-goal requests and coordinating and scheduling efforts by agents—***must be***

***accomplished 'using reasoning.'***" Appx925; Appx4426; Appx4428-4431. And as explained above, the feature relied on to disclose the "goal satisfaction plan"—Kiss's solution plan—is the same feature demonstrated to be constructed using "reasoning." Appx925; Appx4426; Appx4428-4431. Thus, the Board's decision properly considered the language of the claims as a whole.

IPA's argument on this point is further refuted by its own brief. On pages 37 through 42 of its cross-appeal brief, IPA argues that (1) the Board failed to consider its argument that Kiss's "goal satisfaction plan" does not use any "reasoning." IPA Br. 37-42. Although IPA's brief does not identify where in its Patent Owner's Response it made this argument, the cited and quoted portion of the Board's opinion cites page 115 of IPA's Patent Owner's Response in the consolidated 560 Patent proceedings. Appx922 (citing Appx4828). In this same section, IPA also asserts that (2) the Board erroneously "separated its analysis of 'goal satisfaction plan' from its analysis of 'using reasoning.'" IPA Br. 39.

In the ***very next section*** of its cross-appeal brief, however, IPA concedes both assertions. On pages 42 through 44 of its brief, IPA concedes that the Board had (1) "***conducted*** a perfunctory 'analysis' of

the 'using reasoning' element" (2) "that the Board ***acknowledged*** is a requirement of the claimed 'goal satisfaction plan.'" IPA Br. 42 (citing Appx925). The Board's analysis again cites to page 115 of Patent Owner's Response in the consolidated 560 Patent proceedings, the very same page and argument that IPA had just claimed the Board never responded to. The Board therefore expressly responded to the argument that IPA claims was disregarded.

B. The Board's Determination that Kiss Disclosed Using "Reasoning" Is Well-Reasoned.

The Board's determination that Kiss's solution plan is constructed "using reasoning" is more than sufficient to "provide an administrative record showing the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions." *In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002).

In its decision, the Board summarized IPA's "reasoning" argument—that Kiss's inferencing schemes are used only "[a]fter the solution plan is formulated," *i.e.*, they are not used to "construct" the solution plan—and then explained why it rejected such an argument. Appx925 (alterations in original). Specifically, the Board concluded that Microsoft's petition relied "on several other ways in which Kiss utilizes

reasoning to formulate a solution plan 'using various types of reasoning and allocating tasks to different agents.'" Appx925 (quoting Appx4984). The Board then explained that "Kiss describes how the meta-agent can 'formulate parallel sub-plans and perform iterative and recursive procedures.'" Appx925 (quoting Appx4984). As a result, it concluded that this disclosure sufficiently satisfied using "reasoning" to construct Kiss's solution plan. Appx925.

IPA is thus incorrect that the Board did not explain "why" it "accept[ed] the prevailing argument." IPA Br. 43-44 (quoting *In re NuVasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016)). The Board noted that IPA's argument was based on whether Kiss disclosed creating a solution plan using its inferencing schemes, and explained that Microsoft had persuasively demonstrated that (1) "Kiss utilizes reasoning to formulate a solution plan 'using various types of reasoning and allocating tasks to different agents'" and (2) "describes how the meta-agent can 'formulate parallel sub-plans and perform iterative and recursive procedures.'" Appx925 (quoting Appx4984); *see Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 US 281, 285-

286 (1974) (explaining that agency actions will be upheld if "the agency's path may reasonably be discerned").

IPA identifies no substantive disagreement with the Board's analysis. Thus, the Board's reasoned determination that Kiss disclosed construction a "goal satisfaction plan" using "reasoning" is supported by substantial evidence.

## VIII. **Substantial Evidence Supports the Board's Determination that the Prior Art Discloses a "Facilitator."**

The Board correctly determined that Kiss disclosed the claimed "facilitator" as recited by certain claims of the 115 and 560 Patents. Appx911-917. Microsoft had argued, and the Board agreed, that the combination of Kiss's meta-agent and agent facilitator satisfied each and every requirement of the claimed "facilitator." Appx4419; Appx911-917. IPA's principal response to Microsoft's argument was that Kiss's meta-agent itself could not satisfy the claimed "facilitator" because of how the 115 and 560 Patents allegedly differentiated between meta-agents and facilitators. Appx4799-4802; Appx912. The Board correctly rejected that argument as non-responsive to the instituted grounds, as Microsoft had relied on the *combination* of Kiss's meta-agent and agent facilitator together to satisfy the claimed "facilitator." Appx915.

IPA's allegations of error in the Board's "facilitator" findings fail. *First*, the Board did not err by declining to address the argument that IPA now makes on appeal that the scope of the claimed "facilitator" could not ***include*** anything resembling a meta-agent. That is because IPA's argument before the Board was that Kiss's meta-agent ***itself*** could not satisfy the claimed "facilitator." *Second*, IPA's ambiguous disclaimer and/or lexicography argument fails as a matter of law.

### A. The Board Could Not Disregard a "Facilitator" Argument that IPA Did Not Make.

IPA does not identify any argument that it made in its Patent Owner's Responses in the proceedings below that the Board failed to consider. *See* IPA Br. 49-50. Its argument on appeal that "facilitator" must exclude anything that could be referred to as a "meta-agent" was not made in its Patent Owner's Responses in the proceedings below, and is therefore waived. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009).

IPA's arguments in its Patent Owner's Responses regarding the claimed "facilitator" focused exclusively on ***whether Kiss's meta-agent***

***itself*** can constitute a facilitator. Appx4799-4802.[11] IPA's arguments in this section do not refer to or reference Microsoft's argument that Kiss's agent service layer and meta-agent ***together*** satisfy the claimed "facilitator," nor do they argue that such a mapping would violate any meaning ascribed to "facilitator" by the 115 and 560 Patents. The only mention IPA makes of Kiss's agent service layer in its arguments regarding the claimed "facilitator" is to explain its assertion that "[t]he Kiss meta-agent is similar to the meta-agent of the '560 Patent, and does not perform the role of the claimed facilitator." *See* Appx4801 (citing Appx11476(¶117)). It states that "the meta agent of Kiss takes queries and submits 'questions' to the agent service layer" and "receives results or additional queries from the agent service layer …." Appx4801. This discussion in no way suggests the argument IPA now makes regarding whether "facilitator" should be construed to exclude anything called a "meta-agent."

---

[11] IPA's other prior arguments regarding Kiss's meta-agent relate to whether Kiss discloses "optimization" or uses "an intelligent method or its own knowledge resources to interpret capabilities or use strategies or advice in the coordination of requests to and assembly of results from satisfying agents." Appx4802-4805. IPA does not maintain either of these arguments on appeal. *See* IPA Br. 44-50.

When discussing the argument that the Board allegedly ignored, IPA studiously avoids citing to any portion of its Patent Owner's Responses advancing that argument. *See* IPA Br. 44-50. Instead, IPA relies on the Board's partial characterization of its argument:

> Given Petitioner's articulation that the *combination* of the agent service layer and the meta-agent of Kiss constitutes a "facilitator agent," Patent Owner's argument that Kiss's meta-agent is not a facilitator is unavailing because it fails to respond to Petitioner's assertion that the recited "facilitator agent" includes the combination of the Kiss agent service layer and the Kiss meta-agent. *See* PO Resp. 86. Similarly, **Patent Owner's argument that the Kiss meta-agent *cannot be part of a* "facilitator agent" in the combined Kiss/FIPA97 system because the '560 patent identifies a meta-agent as a separate component from the facilitator agent is unavailing for at least the same reason**, i.e., that Patent Owner does not address the functionality of Kiss's meta-agent and agent service layer combined. *See id.* at 87.

Appx915. IPA's reliance on this passage from the Board's opinion as a hook to advance new arguments on appeal fails for several reasons.

*First*, the Board's citation to pages 86-87 of IPA's Patent Owner Response in the consolidated 560 Patent proceedings (Appx915 (citing

Appx4799-4800)) confirms that the Board was still referring to IPA's argument that Kiss's meta-agent "is **not** a facilitator." Appx4799-4800. As is clear from those pages, IPA's argument was that a meta-agent cannot be a facilitator in part because the "facilitator and a 'meta-agent' are both separately shown in Figure 4 as 402 and 406, respectively":




Fig. 4

Appx4799-4800 (citing Appx1336).

The Board's decision simply makes clear that it was unconvinced by this "separately shown" argument because it "does not address the

functionality of Kiss's meta-agent and agent service layer combined." Appx915 (citing Appx4800). IPA identifies no portion of its argument on pages 86-87 that advances the argument it now proffers on appeal, citing only generally to its Response arguments on this point and to its assertion that Kiss's meta-agent "is similar to the meta-agent of the" challenged patents. IPA Br. 47-48 (citing Appx4797-4806; Appx4801).

*Second*, even if the Board's decision were read generously to reject an argument IPA did not make, that still does not forgive IPA for failing to respond to Microsoft's reply explanation and thus waiving the issue before the Board. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595–96 (7th Cir. 2017) (failure to respond via sur-reply can constitute waiver). Thus, IPA's argument that the claimed "facilitator" cannot include anything that could be considered a "meta-agent" is waived and should not be considered. *See Fresenius*, 582 F.3d at 1296.

B. IPA Fails to Identify Sufficient Lexicography or a Disclaimer to Limit the Claimed "Facilitator" As Argued.

IPA's assertion that the "patents make clear that a meta-agent like that in Kiss cannot ***be part of*** the facilitator recited in the claims," even if considered for the first time on appeal, fails as a matter of law. *See* IPA Br. 44-50. IPA fails to meet the exacting standards of proving a

disclaimer or lexicographical definition sufficient to rewrite the plain meaning of its claims.

The portions of the patents identified by IPA do not "define" meta-agents as being mutually exclusive with facilitator agents or otherwise disclaim facilitators that include sub-components that could be considered "meta-agents." *See* IPA Br. 46-47 (citing Appx1351(6:54-62)). Those portions state that "[a]ll agents that are not facilitators are referred to herein generically as client agents" and "[t]he variety of possible client agents is essentially unlimited." Appx1351(6:54-60). They further state that "[s]ome typical categories of client agents would ***include*** ... meta-agents 406." Appx1351(6:60-62). But nothing in this language precludes certain meta-agents from being considered "facilitators," or from being a part of one. At best, the cited portions state that ***some*** meta-agents might not be "facilitators."

The other portions of the specification identified by IPA fare no better. IPA cites column 6 lines 38-43, which discusses "the structure ***typical*** of a small system 400 in ***one embodiment***," which includes "meta-agents 406" and other components "organized as a community of peers by their common relationship to a facilitator agent 402." IPA Br.

46 (citing Appx1351(6:38-43)). The challenged patents also disclose other embodiments, such as the less structured embodiment shown in Figure 3, and explain that these systems "can be expanded upon and modified in a variety of ways consistent with the present invention." Appx1351(6:16-29). For example, the "facilitator agent 310 may have its functionality distributed across several different computing platforms" and "[s]everal different systems 300 may be coupled together for enhanced performance." Appx1351(66:29-36).

Critically, IPA ignores the embodiment disclosed in Figure 15, which discloses a hierarchical topology that "supports ***a facilitator implemented as an agent like any other***, whereby multiple facilitator network topologies can be readily constructed." Appx1362(28:57-60). As shown in Figure 15, "a top level Facilitator manages collections of both client agents 1508 and other Facilitators." Appx1362(28:57-65).




Fig. 15

Appx1347. Given the patents' explanation that "***[m]eta-agents 406 are agents whose role is to assist the facilitator agent 402*** in coordinating the activities of other agents" (Appx1352(7:4-6)), it is impossible to distinguish the supporting facilitators of Figure 15, which are "implemented as an agent like any other" and "assist" facilitator agent 1502 "in coordinating the activities of other agents," from a meta-agent like those disclosed in Figures 3-4. IPA's failure to address this disclosure is fatal to its argument.

There is also considerable uncertainty regarding the scope of what would be excluded under IPA's understanding of the claims. *See Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 771 (Fed. Cir. 2018) (requiring "precise and clear language" to limit claims). IPA argues that Kiss's meta-agent would be excluded because, in addition to having the same name, it is "***analogous to*** the meta-agent distinguished from the facilitator agent in the patents-at-issue." IPA Br. 47 (emphasis added). But IPA does not identify any characteristics of what makes a meta-agent that could inform the scope of what must be excluded from the scope of "facilitator." *See* IPA Br. 47-48. IPA's argument reduces to whether Kiss calls its component "meta-agents," which is an untenable demarcation of scope given that prior art need not use "the same words as the patentee." *See Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1384 (Fed. Cir. 2011).

Moreover, even if IPA were to demonstrate that the challenged patents disclaimed a meta-agent from being a "facilitator," that does not demonstrate that the patents disclaimed meta-agent from being "*a part of a facilitator agent*" as IPA's argument necessary requires. *See* IPA Br. 49; *Acceleration Bay*, 908 F.3d at 771. IPA offers no explanation as to

how the challenged patents exclude from the meaning of "facilitator" any sub-component "whose role is to assist the facilitator." *See* Appx1352(7:4-6). This would again be contrary to the disclosure of the challenged patents, including the embodiment in Figure 15 where facilitator agents 1504 and 1506 are "implemented as an agent like any other" and "assist" facilitator agent 1502. *See* Appx1352(7:4-6); Appx1362(28:57-65).

The disclosure IPA identifies in the 115 and 560 Patents is thus distinguishable from disclosure at issue in the cases relied on by IPA. *See* IPA Br. 48-49. In *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1194 (Fed. Cir. 2013), this Court found that a patent's specification "expressly confines culturing with beads to two-dimensional culturing." Likewise, in *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001), the patentee had used a claim term "in a manner consistent with only a single meaning" that was incompatible with a broader reading. As shown above, the challenged patents do not so narrowly define the meaning of "facilitator" to exclude anything that could be considered a "meta-agent," and instead disclose express examples consistent with Microsoft and the Board's application

of that term. For all of these reasons, IPA's novel and waived claim construction argument fails as a matter of law.

## IX. Substantial Evidence Supports the Board's Determination that the Prior Art Discloses an "Interagent Communication Language (ICL)."

The claims of the challenged patents recite a plurality of agents using an "interagent communication language," or "ICL." This ICL includes "parameter lists" that "further refine" one or more "events." The Board determined that FIPA97's Agent Communication language (FIPA ACL) satisfied the requirements of the claimed ICL, "events," and "parameter lists." Appx926-939.

IPA's arguments based on these features fail. *First*, IPA does not dispute the Board's claim construction of "refine … events" as encompassing "affecting the meaning of the events," nor does it clearly challenge the accuracy of the Board's factual findings that FIPA97 discloses parameters within the scope of that construction. *See* IPA Br. 50-58. That is fatal to IPA's argument. *Second*, IPA's arguments that the Board's factual findings are contrary to the prosecution history and specification fail factually and as a matter of law.

### A. The Board's Uncontested Construction and Fact Findings Are Fatal to IPA's Arguments.

On appeal, IPA does not contest the Board's construction of "refine … events" as encompassing "affecting the meaning of the events," nor does IPA directly identify any evidentiary deficiencies in the Board's application of that construction to the facts of FIPA97. IPA's brief does not ***even mention*** the Board's construction of the "refine … events" claim language. *See* IPA Br. 50-58. And IPA's complaints about the Board's fact finding rely on aspects of the challenged patents' prosecution history and specification that are only relevant to claim construction, not whether the Board correctly applied its construction to the prior art. IPA's claim construction arguments are thus waived as untimely, and are also irrelevant to whether substantial evidence supports the Board's application of an undisputed construction. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020).

During the proceedings below, the parties agreed that the phrase "the parameter lists further refine the one or more events" should be construed, as Microsoft had proposed, to mean that "a list of parameters associated with an event can refine the event by affecting the meaning of the event." Appx4398; Appx4742-4765 (IPA not contesting that

construction); Appx4834-4838 (IPA's Response arguing FIPA97 did not "affect" the "meaning" of messages); *see also* Appx5099-5100 (IPA's sur-reply likewise relying on Microsoft's construction). Although the Board noted the parties' agreement, it explained that the portions of the specification relied on by Microsoft for the agreed-upon constructions referred to exemplary embodiments. Appx931. As a result, the Board determined that "the term 'the parameter lists further refine the one or more events' encompasses parameters 'affecting the meaning of the events.'" Appx932.

The Board next determined that Microsoft had demonstrated that FIPA97's disclosure of an Agent Communication language (FIPA ACL) satisfied the various requirements of the claimed ICL, including the "events" and "parameter lists." Appx932-934. The Board specifically identified disclosure within FIPA97, as identified in Microsoft's petition, of a ":receiver" parameter that affects the meaning of an associated message. Appx934. FIPA97 states that the ":receiver" parameter signifies an *intent* of the sender with respect to that message that is not signified by the message alone:

> Note that the recipient may be a single agent name, or a tuple of agent names. This corresponds to the action of

> multicasting the message. Pragmatically, the semantics of this multicast is that the message is sent to each agent named in the tuple, and that the sender *intends* each of them to be recipient of the CA encoded in the message. For example, if an agent performs an inform act with a tuple of three agents as receiver, it denotes that the sender *intends* each of these agent[s] to come to believe the content of the message.

Appx7587 (Board's emphasis); Appx934. Microsoft explained, and the Board agreed, that this disclosure means the parameter changes the meaning of the associated event: "an event using 'inform' can *mean three or more different things* (i.e., inform (1) one person, (2) a select group of people, (3) everybody) depending on the value of just that parameter." Appx4991; Appx934. As a result, the Board determined that "this passage describes, under the column heading 'Meaning,' the meaning of the message modified or affected by the ":receiver" parameter. Appx934.

IPA's disagreements with the Board's determination on this point rely on its mischaracterizations of the prosecution history and the specification. IPA argues that "there is no way to square this finding with the specifications of the patents-at-issue or the Examiner's

statements in the prosecution history," IPA Br. 54 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995)), and then spends several pages discussing why it believes that is so, IPA Br. 55-58. As is obvious from its arguments and its citation to *Markman v. Westview*, however, IPA knows that this is a claim construction argument, yet it fails to mention that it ***did not dispute*** Microsoft's construction before the Board, which the Board agreed was one example of functionality within the scope of the claims.

Because IPA did not dispute before the Board that "the term 'the parameter lists further refine the one or more events' encompasses parameters 'affecting the meaning of the events,'" Appx932, and does not dispute on appeal the correctness of the Board's construction, its claim construction arguments on appeal must be dismissed. *See In re Google*, 980 F.3d at 863.[12]

[12] IPA cannot claim, on reply, that it disputes the Board's construction when, in its opening brief, it made no mention of the construction or advanced any argument that it was wrong.

### B. The Board's Determination Is Consistent with the Prosecution History and Specification.

IPA's assertion that FIPA97's disclosure and the Board's findings cannot be squared "with the specifications of the patents-at-issue or the Examiner's statements in the prosecution history" is meritless. *See* IPA Br. 54-58. The Board extensively addressed how its findings square with the prosecution history and specification. IPA identifies nothing that overcomes the substantial evidence supporting the Board's opinions.

***First***, substantial evidence supports the Board's determination that FIPA97's parameter list is distinguishable from the art at issue during prosecution. Appx929-932; Appx936. As the Board found, the parameter lists at issue during prosecution did not affect the "meaning" of their associated events, Appx929-932 , while the parameter lists disclosed by FIPA97 ***did*** affect the "meaning" of the associated events, Appx936.

During prosecution, IPA had amended the claims of the 115 Patent to distinguish them from the Nwana prior art reference, which disclosed a different, prior art inter-agent communication language called KQML. Appx6323-6324. The claims had recited "a layer of

conversational protocol defined by event types and parameter lists associated with one or more of the events," which the examiner concluded was satisfied by Nwana's disclosure of a KQML message ("event") that included a performative ("tell") and a list of parameters. Appx6361; Appx7965. The examiner concluded that these parameters comprise "low level communication parameters, such as the identities of the sender and the recipient," but do not "further refine[] the event." Appx6323-6324. Thus, the Board correctly determined that prosecution history indicates that merely identifying "the identities of the sender and the recipient" does not "refine" an event. *See* Appx929; Appx936.

The Board further correctly determined that FIPA97's disclosure goes beyond merely identifying the identities of the sender and recipient, and instead includes parameters that affect the meaning of ("refine") the event they are associated with. Appx932-936. Specifically, the Board agreed with Microsoft that FIPA97's ":receiver" parameter can affect the meaning of an "inform" message by specifying that the message should inform "(1) person, (2) a select group of people, (3) [or] everybody," dependent "on the value of just that parameter." Appx934 (quoting Appx4991). The Board further concluded that the description

of the ":receiver" parameter provided by FIPA97 demonstrates how that parameter affects the meaning of the "inform" message: "if an agent performs an inform act with a tuple of three agents as receive, it denotes that the sender *intends* each of these agent[s] to come to believe the content of the message." Appx7587 (Board's emphasis); Appx934-935.

IPA does not dispute that FIPA97's disclosure is distinguishable from "the identities of the sender and the recipient" found by the examiner to be disclosed by the Nwana reference. Instead, IPA appears to attack the specificity provided *by the examiner* in the notice of allowance, asserting that "the record contains no evidence that the receiver in Nwana suffers from the problem that the Examiner identified," *i.e.*, that it "is limited by a 'standard set of events' or 'possible conversational options.'" IPA Br. 55. But this appeal is not an opportunity for IPA to rewrite the prosecution history.[13] Read fairly for what the notice of allowance says, the examiner distinguished Nwana

[13] IPA could have filed correspondence clarifying its understanding of the examiner's reasons for allowance, as is common during patent prosecution, but in this case did not do so. *See* Appx6311-6317 (post-allowance portion of the file history not including such correspondence).

in part because its parameters identifying "the identities of the sender and the recipient" does not "refine" an event. Appx6324. The examiner did not discuss or identify disclosure in Nwana of the kind disclosed by FIPA97, *i.e.*, a more flexible "receiver" parameter that allows one to specify whether a message is ***intended*** for one, some, or all of a given set of users. *See* Appx6324.

Nor does Nwana contain disclosure, as IPA suggests, analogous to the disclosure in FIPA97 relied on by the Board. *See* IPA Br. 55. Nwana uses the word "receiver" exactly once, provides little explanation as to how that parameter is used, and gives only one example: "The KQML performative in this message is `tell`, and the agent that is sending it seeks to inform some customer, `customer-2`, of a quote for performing some service …." Appx7966. IPA identifies no express disclosure in Nwana of allowing a user to specify whether a message is intended for one or more than a single "customer," which was exactly the additional functionality the Board found satisfied the claims here.

***Second***, the Board correctly analogized FIPA97's receiver parameter to the "solution_limit(N)" parameter disclosed in the challenged patents, which further demonstrates the correctness of the

Board's unpatentability determination. Appx935. IPA admits that the "solution_limit(N) parameter *is* a claimed parameter list that refines events" (IPA Br. 58), which is precisely the basis of Microsoft's argument (which the Board agreed with). Appx932-935. As Microsoft explained, the challenged patents disclose using the performative "ev_post_solve" to communicate a request, but its meaning depends on the value of the parameter "solution_limit(N)" and the value of "N," *e.g.*, to request the identity of three agents capable of translating a document, one would include "solution_limit(N)" in the message and set N=3. Appx4399. That is the same type of "affecting the meaning of the event" disclosed by FIPA97, and further supports the correctness of Microsoft's mapping. Appx932-935.

***Third***, IPA repeatedly invokes the patents' discussion of the alleged extensibility of the claimed ICL, yet fails to tie this supposed extensibility to any claim element or requirement. *See* IPA Br. 56-57 (arguing that FIPA97 is "'precisely defined,' not extensible" like ICL). The parties' and the Board's agreed upon construction of "refine … events" as at least encompassing "affecting the meaning of the events" has no express relation to IPA's alleged extensibility requirements.

Indeed, certain claims of the challenged patents, such as claim 1 of the 115 Patent, expressly recite that the claimed inter-agent language is "expandable" while others, such as claim 1 of the 560 Patent, do not. That suggests that the "refine … events" language in and of itself does not require extensibility. Notably, the Board expressly determined that FIPA97 disclosed an "expandable" language as recited by claim 1 of the 115 Patent, *see* Appx99-105, yet IPA does not discuss or separately challenge that finding on appeal.

Moreover, the examiner's statement during prosecution that the claimed invention allows for a "standard set of events [that] are ***dynamically extensible*** based upon the parameter list" appears to merely restate the existing requirements of the claim, *i.e.*, "wherein the parameter lists further ***refine*** the one or more events." Appx6324; Appx1363(30:22-23). Whether FIPA97 has a well-defined syntax is entirely irrelevant to whether its parameter lists can further "refine" and extend the meaning of its events. Even in that regard, IPA is flat wrong: FIPA97 explains that its system is "extensible, in that additional parameters can be defined and used by agent developers." Appx7559.

***Finally***, IPA cites *Magnum Oil*, 829 F.3d at 1381, to assert that the Board impermissibly shifted the burden to make IPA prove the validity of its claims. *E.g.*, IPA Br. 57-58. Not at all. The Board found that Microsoft's arguments were persuasive, Appx928-939, and the Board's observation that IPA had failed to offer any cogent or convincing rebuttal has nothing to do with burden shifting.

## X. Substantial Evidence Supports the Board's Determination that IPA Failed to Demonstrate Sufficient Nexus between any Secondary Considerations of Nonobviousness and the Claims of the 115 and 560 Patents.

Faced with the significant evidence supporting Microsoft's arguments that it would have been obvious to combine the Kiss and FIPA97 prior art references in a way that satisfies the claims, IPA responded by submitting putative evidence of secondary considerations of nonobviousness. IPA based its secondary considerations argument on the idea that the Siri voice assistant application (now owned by Apple) bears a nexus to the claims of the 115 and 560 Patents, such that any commercial success and acclaim of Siri demonstrates the nonobviousness of IPA's patent claims. *See* Appx954-959.

IPA had the burden of demonstrating the required nexus. *In re Huang*, 100 F.3d 135, 139–40 (Fed. Cir. 1996). The Board correctly

rejected IPA's arguments and provided over 20 pages of detailed findings as to why IPA's evidentiary showing was insufficient to demonstrate that any acclaim or success of Siri could fairly be attributable to the challenged claims. Appx959-971. Because IPA had demonstrated, at best, a "weak or vague connection between the Siri application and the claimed invention," the Board determined that Microsoft had demonstrated the obviousness of the claims. Appx970-971.

None of IPA's arguments on appeal undercut the substantial evidence supporting the Board's decision. Because the Board correctly determined that (1) IPA had failed to demonstrate that Siri actually practices any claim of the 115 and 560 Patents and also that (2) IPA had failed to demonstrate that any of Siri's success or acclaim had a legally sufficient nexus to the challenged claims, the Board's obviousness findings must be affirmed.

### A. Substantial Evidence Supports the Board's Determination that IPA Failed to Demonstrate that Siri Practices the 115 and 560 Patents.

The Board's determination that IPA failed to demonstrate that Siri practices the challenged claims of the 115 and 560 Patents is

supported by substantial evidence. IPA had relied on its declarant, Dr. Medvidovic, to argue that (1) the 115 and 560 Patents were based on SRI International's development of version 2 of the Open Agent Architecture ("OAA v.2"), and (2) that the Siri application was "created based on an OAA [v.2] groundwork." Appx4866-4867. But the Board concluded that only a fuzzy-at-best relationship existed between the Siri application and the OAA v.2 specification and noted IPA's reliance on circumstantial nexus evidence. *See* Appx965; Appx10110-10111(147:7-148:9) (Dr. Medvidovic admitting that his nexus evidence was "circumstantial" and a "suggestion" at best).

After considering the evidence as a whole, the Board correctly rejected the fundamental assumption at the core of IPA's argument: it determined that "there is evidence of record that credits the CALO project," *rather than OAA v.2*, "with being the progenitor of the ideas that led to Siri." Appx967-968 (citing and quoting, *e.g.*, Appx10300; Appx10611; Appx11784; Appx11789; Appx11800; Appx11874); Appx962-963. In light of that factual finding, for which there is ample evidence of record, IPA's arguments fall apart. Dr. Medvidovic supported the bulk of his opinion with reference to the OAA v.2

specification, which is irrelevant because there is no evidence that Siri implements the OAA v.2 specification. *See* Appx11513-11571.

IPA's only response in this Court is to point to two ambiguous statements that relate the CALO project to OAA generally but do not specify whether the CALO project is based on OAA v.1 and OAA v.2. *See* IPA Br. 64-65. The first is a single sentence from an SRI webpage that states "OAA laid the groundwork for the DARPA-funded CALO project," yet that sentence does not distinguish between OAA v.1 or OAA v.2. Appx11874. The second is testimony from Microsoft's declarant that OAA "eventually was spun off as a company called 'Siri'" that eventually "led to the Siri conversational agent on the iPhone." Appx12244(24:4-23). Given that IPA and its inventor, Mr. Cheyer, admit that OAA version 1 did not implement the "agent registry functionality described" in the 115 and 560 Patents, this evidence related to OAA generally cannot undercut the substantial evidence underlying the Board's decision. Nor is it the role of this Court to reweigh that evidence.

Moreover, even if OAA v.2 "laid the groundwork" for Siri—which is not supported by any detailed technical evidence other than mere

assertion—that is still insufficient to demonstrate that Siri ever practiced any claim of the 115 and 560 Patents. That is because IPA has utterly failed to show that Siri implements the OAA v.2 specification in a way that satisfies the claims. The only evidence that IPA advanced in that regard was the conclusory and unsupported testimony of Dr. Medvidovic. *See* Appx4867-4872. The Board expressly rejected that testimony, noting among other things that Dr. Medvidovic had never examined the source code for Siri, even though he testified that such an examination would be required to determine if the claims were being practiced. Appx965. Indeed, the only Siri-specific evidence Dr. Medvidovic relied on was a single, 5-page web.archive.org Internet webpage. Appx11500-11512(¶¶211-229) (Dr. Medvidovic citing only Ex. 2040 for his understanding of Siri's technical operation); Appx11778-11782. The Board was entitled to consider this evidence as a whole and give it the negligible weight it deserved. *Bieber*, 287 F.3d at 1364.

IPA points to Dr. Medvidovic's testimony that he would not need to review source code if "additional facilities, models, and specifications" had been provided to him, and misleadingly implies that Dr. Medvidovic had relied on such evidence in this case. *See* IPA Br. 62-63 (citing

Appx5111). He did not rely on any such evidence. As noted above, the only Siri-specific evidence that Dr. Medvidovic relied on was Exhibit 2040, the 5-page high level webpage summary of Siri that contains a page and a half of technical explanation. Appx11500-11512(¶¶211-229). That evidence is thus totally dissimilar to the "facilities, models, and specifications" that Dr. Medvidovic made clear would be required in order to conclude, in the absence of source code, that a system could satisfy the claims. Appx9973-9974(10:14-11:16).[14] The only other evidence Dr. Medvidovic relies on at all were the OAA v.2 specifications, which can hardly be used to confirm his opinion that Siri practices the OAA v.2 specifications as written. *See* Appx11513-11571.

Lastly, IPA is incorrect that the only fault the Board found with Dr. Medvidovic's testimony was his failure to review source code. *See* IPA Br. 62. The Board additionally concluded that "Dr. Medvidovic …

[14] IPA's allegations that "nothing in the record disputes the sufficiency of" Dr. Medvidovic's relied-on evidence "for the task" of showing that Siri embodies the challenged claims is patently false. *See* IPA Br. 63. Dr. Medvidovic's testimony was that one would need (i) "facilities, models, and specifications" or (ii) source code to determine whether Siri practiced the claims. Appx9973-9974(10:14-11:16). He was given neither. Appx11500-11512(¶¶211-229). The Board properly rejected his testimony as unsupported based on that testimony alone.

does [not] point to any evidence to show that the Siri application utilizes the claimed parameter lists." Appx967. IPA does not dispute that finding on appeal. Thus, the Board was correct to reject IPA's reliance on Siri as a source of secondary considerations because IPA had failed to sufficiently demonstrate that Siri practiced the claims.

### B. Substantial Evidence Supports the Board's Determination that IPA Failed to Demonstrate Nexus Between Any of Siri's Acclaim or Success and the 115 and 560 Patents.

Regardless of whether IPA could demonstrate that the Siri application practices the 115 and 560 Patents, IPA still could not demonstrate nonobviousness through secondary considerations because the Board expressly found that Siri includes significant unclaimed features and IPA had failed to demonstrate legally sufficient nexus. Appx969-970. IPA argues that it is undisputed "that Siri was commercially successful and fulfilled a long-felt but unmet need" and Microsoft was thus obligated "to respond with counter-evidence," IPA Br. 60-61, but this misunderstands what IPA was required to demonstrate. IPA had the burden of ***proving nexus***, *see In re Huang*, 100 F.3d 135, 139–40 (Fed. Cir. 1996), because evidence of secondary considerations "is ***only significant if there is a nexus*** [with respect

to] the claimed invention," *Ormco Corp v. Align Tech.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006). IPA failed to do that here which is fatal to its secondary considerations arguments.

IPA does not dispute that there were other reasons for the Siri application's success and acclaim. *See* IPA Br. 61. As the Board found when rejecting IPA's secondary considerations arguments, the Siri application includes substantial unclaimed functionality that can explain the source of its commercial success and acclaim: its "conversational interface." Appx966; *see* IPA Br. 61. IPA quotes the Board's finding that "Dr. Medvidovic discusses the 'personal context awareness' and 'service delegation' aspects of Siri in some detail," but "only mentions Siri's 'conversational interface' in passing …." IPA Br. 61 (quoting Appx966). This finding is significant because there is no presumption of nexus where, like here, the embodying product includes significant unclaimed features. *See Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1374-78 (Fed. Cir. 2019); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016).

IPA does not dispute or rebut the Board's findings that the "conversational interface" is a "significant part" of Siri's functionality

and source of its success and acclaim. Appx969-970; Appx966. The Board examined and credited substantial evidence supporting its conclusion that "the evidence of record relied on by Patent Owner shows that the Siri application, and its attendant 'industry praise,' is not coextensive with the patented invention." Appx970. The Board explained that "Dr. Medvidovic … only mentions Siri's 'conversational interface' in passing, even though Exhibit 2040" highlights such functionality and lists it "as the first of Siri's 'three main technical components.'" Appx966 (citing Appx11778). IPA does not and cannot dispute these findings. As such, the Board was entitled to accord IPA's evidence little weight for failing to "establish a nexus between the evidence and the merits of the claimed invention." *See SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000) (quoting *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995)); *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 837 (Fed. Cir. 2015) (finding evidence of secondary indicia carries little weight because of weak nexus with the merits of the invention).

Thus, the Board did not disregard any of IPA's evidence of purported secondary considerations. It simply found it so severely

lacking that it was insufficient to overcome Microsoft's prima facie case of obviousness. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (weak secondary considerations cannot overcome a "strong prima facie case of obviousness").

## CONCLUSION

For the foregoing reasons and those explained in Microsoft's opening brief, this Court should (i) reverse or vacate the Board's findings that Claims 8-10, 29-47, 63, and 86-89 of the 115 Patent and Claims 10, 11, 28, 50, 51, and 53-55 of the 560 Patent had not been shown to be unpatentable, and (ii) maintain the Board's findings that Claims 1-7, 11-28, 48-62, and 64-85 of the 115 Patent and Claims 1-9, 12-27, 29-49, and 52 of the 560 Patent had been shown to be unpatentable.

Dated: October 4, 2021

/s/ Richard A. Cederoth
Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

Joseph A. Micallef
Scott M. Border
Samuel A. Dillon

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Circuit Rule 32(b)(1). This brief contains 13,901 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point Century Schoolbook font.

Dated: October 4, 2021

/s/ Richard A. Cederoth

Richard A. Cederoth
SIDLEY AUSTIN LLP
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

/s/ Richard A. Cederoth
Richard A. Cederoth
SIDLEY AUSTIN LLP
*Counsel for Appellant*