**2021-1412, -1413, -1414, -1416, -1417, -1418, -1419, -1420, -1421, -1422, -1423, -1424, -1440, -1442**

# United States Court of Appeals for the Federal Circuit

MICROSOFT CORPORATION,

*Appellant*,

v.

IPA TECHNOLOGIES INC.,

*Cross-Appellant*.

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. IPR2019-00810, IPR2019-00811, IPR2019-00812, IPR2019-00813 and IPR2019-00814, IPR2019-00835, IPR2019-00836, and IPR2019-00837.*

## REPLY BRIEF FOR CROSS-APPELLANT IPA TECHNOLOGIES INC.

PAUL J. SKIERMONT
SARAH E. SPIRES
JAIME K. OLIN
STEVEN W. HARTSELL
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Tel: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
sspires@skiermontderby.com
jolin@skiermontderby.com
shartsell@skiermontderby.com

MIEKE K. MALMBERG
SKIERMONT DERBY LLP
800 Wilshire Blvd., Suite 1450
Los Angeles, CA 90017
Tel: (213) 788-4502
Fax: (213) 788-4545
mmalmberg@skiermontderby.com

*Counsel for Cross-Appellant, IPA Technologies Inc.*

December 15, 2021

# TABLE OF CONTENTS


INTRODUCTION .......................................................................................... 1

ARGUMENT ................................................................................................ 3

I. The Board Erred in Finding that Exhibits 1006-1012 are the Version of FIPA97 Publicly Available Before the Critical Date .................................... 3

A. Supreme Court Precedent Requires Corroboration of Dr. Finin's Testimony ................................................................................................ 3

B. The Board Failed to Require Corroboration of Dr. Finin's Testimony as to Whether Exhibits 1006-1012 are the Version of FIPA97 Publicly Available Before the Critical Date ................................................................ 5

C. The Rule of Reason Analysis Does Not Support the Board's Findings of Corroboration ............................................................................................ 8

a. (1) delay between event and trial ................................................................ 9

b. (2) interest of witness and (8) relationship between witness and alleged prior user. ................................................................................................ 9

c. (3) contradiction or impeachment and (5) witnesses' familiarity with details of alleged prior structure ................................................................... 9

d. (4) corroboration ........................................................................................ 10

e. (7) impact of the invention on the industry ............................................. 14

II. The Board Erroneously Found that the Prior Art Separately Discloses a "Goal Satisfaction Plan" and "Uses Reasoning" ......................................... 15

III. The Board's Decision Cannot Be Reconciled With the Specification's Exclusion of Meta-Agents from Being Part of The Recited Facilitator Agent ........................................................................................................ 18

IV. The Board Legally Erred in Determining that FIPA97 discloses the recited ICL element "Wherein the Parameter Lists Further Refine the One or More Events" ................................................................................... 23

V. The Board Erroneoulsy Disregarded IPA's Unrebutted Objective Indicia of Obviousness Evidence ......................................................................... 27

CONCLUSION ............................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**

*B/E Aerospace, Inc. v. C&D Zodiac, Inc.*,
709 F. App'x 687 (Fed. Cir. 2017) ....................14

*C.R. Bard, Inc. v. AngioDynamics, Inc.*,
748 F. App'x 1009 (Fed. Cir. 2018) ....................13

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999).................... 5, 7, 8, 15

*Fleming v. Escort Inc.*,
774 F.3d 1371 (Fed. Cir. 2014)....................6

*Hollmer v. Harari*,
681 F.3d 1351 (Fed. Cir. 2012)....................19

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*,
676 F.3d 1063 (Fed. Cir. 2012)....................16

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016)....................25

*In re Power Integrations, Inc.*,
899 F.3d 1316 (Fed. Cir. 2018)....................13

*Jones v. Hardy*,
727 F.2d 1524 (Fed. Cir. 1984)....................16

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
292 F.3d 728 (Fed. Cir. 2002).................... 8, 15

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................16

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010)....................4

*Leo Pharm. Prods., Ltd. v. Rea*,
726 F.3d 1346 (Fed. Cir. 2013)....................27

*Lifestyle Enter., Inc. v. United States*,
751 F.3d 1371 (Fed. Cir. 2014) ........ 19, 23

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) ........ 8, 15

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*,
903 F.3d 1365 (Fed. Cir. 2018) ........ 13

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ........ 6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........ 12

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018) ........ 31

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
815 F.3d 734 (Fed. Cir. 2016) ........ 29

*Rambus Inc. v. Rea*,
731 F.3d 1248 (Fed. Cir. 2013) ........ 30

*Rosco, Inc. v. Mirror Lite Co.*,
120 F. App'x 832 (Fed. Cir. 2005) ........ 7, 15

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
164 F.3d 1372 (Fed. Cir. 1998) ........ 24

*Techtronic Indus. Co. v. Int'l Trade Comm'n*,
944 F.3d 901 (Fed. Cir. 2019) ........ 24

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
308 F.3d 1193 (Fed. Cir. 2002) ........ 12

*TransWeb, LLC v. 3M Innovative Properties Co.*,
812 F.3d 1295 (Fed. Cir. 2016) ........ 6

*TRUSTID, Inc. v. Next Caller, Inc.*,
No. 2020-1950, 2021 WL 4427918 (Fed. Cir. Sept. 27, 2021) ........ 18

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
374 F.3d 1151 (Fed. Cir. 2004).....4

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*,
308 F.3d 1167 (Fed. Cir. 2002).....5

*United States v. C.H. Robinson Co.*,
760 F.3d 1376 (Fed. Cir. 2014).....28

*United States v. Williams*,
504 U.S. 36 (1992).....19

*Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*,
143 U.S. 275 (1892).....4

*Woodland Trust v. Flowertree Nursery*,
148 F.3d 1368 (Fed. Cir. 1998)..... 5, 15

# TABLE OF ABBREVIATIONS

| Abbreviation | Full Term |
|---|---|
| (xx:yy-zz) | If this format cites to a patent it refers to column xx, lines yy-zz. |
| ’115 patent | U.S. Patent No. 6,851,115 |
| ’560 patent | U.S. Patent No. 7,069,560 |
| Appx | Joint Appendix |
| cl.xx | Claim no.xx [in cited patent] |
| FWD | Final Written Decision |
| IPA or Cross-Appellant | IPA Technologies Inc. |
| Microsoft or Appellant | Microsoft Corporation |
| OpeningBr. | IPA Opening Brief |
| patents-at-issue | ’115 patent and ’560 patent |
| POR | Patent Owner Response |
| POSA | Person of ordinary skill in the art |
| Response | Microsoft Response and Reply Brief |

# INTRODUCTION

Microsoft's Response only emphasizes the errors in the FWDs. For example, the Board legally erred in failing to require corroboration of Dr. Finin's testimony that the version of FIPA97 found in Exhibits 1006-1012—downloaded after the critical date and the only version of at least three different versions of "FIPA97 Version 1.0" Microsoft chose to put into evidence—is *the same version* the Board found was publicly available before the critical date. Emphasizing that the Board *failed to require corroboration on this point*, Microsoft cites evidence relevant to a different issue *not on appeal*—whether *any version* of FIPA97 was available prior to the critical date.

The Board also legally erred by failing to consider the invention as a whole—rather than as separate claim elements, failing to consider all evidence prior to making its decisions, applying claim constructions in a manner inconsistent with the intrinsic evidence, and by shifting the burden of proof to IPA. Rather than address the Board's legal errors, Microsoft chose to argue—incorrectly—that IPA had waived its arguments. This is despite Microsoft's acknowledgment in one instance that the Board had actually ruled on the argument (IPA also made the argument below), and Microsoft's admission that IPA had raised another of its argument in its POR. The law is clear that neither instance constitutes waiver, and so Microsoft's attempt to avoid the Board's errors must

fail.

Microsoft further fails to address the Board's factual errors that prevent there from being substantial evidence to support the Board's findings despite the Board's legal errors. For these reasons, the arguments in IPA's Opening Brief stand, and the FWDs must be reversed.

## ARGUMENT

### I. THE BOARD ERRED IN FINDING THAT EXHIBITS 1006-1012 ARE THE VERSION OF FIPA97 PUBLICLY AVAILABLE BEFORE THE CRITICAL DATE

Microsoft argues that "[t]he Board made extensive findings of fact with over 25 pages of analysis, drawing from the testimony of multiple declarants and more than sixty documentary exhibits of evidence provided by Microsoft to demonstrate the prior art status of FIPA97." (Response, 25-26.) Microsoft's argument intentionally obfuscates the point. The prior art status of FIPA97 is not on appeal, so with the exception of the Finin declaration, *all* the evidence that Microsoft cites (and criticizes IPA for ignoring) *does not relate to the issue on appeal*. As discussed below, the Board legally erred in applying the corroboration requirement to Dr. Finin's testimony.

#### A. Supreme Court Precedent Requires Corroboration of Dr. Finin's Testimony

Microsoft argues that Dr. Finin's testimony did not require corroboration, because corroboration is only required when a witness's "testimony ***alone*** is asserted to invalidate a patent." (Response, 28 (quotation omitted).) Microsoft misstates the law and conflates the facts. ***First***, Microsoft argues that the Board did not rely on Dr. Finin's testimony *alone* to make its determination. Microsoft conflates the issues on appeal, relying on evidence regarding the *prior art status* of FIPA97, which is irrelevant to the issue on appeal. (Response, 28.)

***Second***, this is not the law. In the two sentences after the quote Microsoft excerpts from *Lazare Kaplan*, this Court unequivocally stated, without caveats, that "oral testimony asserted to invalidate a patent ***must be corroborated***." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1374 (Fed. Cir. 2010 (emphasis added)). The *Lazare Kaplan* Court then applied the corroboration requirement where evidence beyond a witness's testimony was presented, analyzing whether a contract, additional witness testimony, video, and photograph constituted "evidence [that] was sufficient to corroborate [the witness's] testimony." *Id*. And in *TypeRight*, which *Lazare Kaplan* quotes, this Court similarly held that "the district court will still have to address whether the legal requirement of corroboration has been met," where the relied-upon evidence in addition to the witness testimony consisted of the testimony of paid consultants, a document, and a report. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1155, 1159 (Fed. Cir. 2004).

The Supreme Court explained the importance of the corroboration requirement in *The Barbed Wire Patent*, noting "the unsatisfactory character of testimony, arising from the forgetfulness of witnesses, their liability to mistakes, [and] their proneness to recollect things as the party calling them would have them recollect them". 143 U.S. 275, 284 (1892) (reversing invalidity finding based on testimony of 24 uninterested witnesses about an exhibition 20 years prior). A

century later, this Court noted: "The Supreme Court's view of human nature as well as human recollection, whether deemed cynical or realistic, retains its cogency. This view is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity." *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1373 (Fed. Cir. 1998) (reversing invalidity finding based on testimony of four witnesses about events 20 years prior, corroborated by two undated photographs). For these reasons, this Court has held that "[u]ncorroborated oral testimony by interested parties is insufficient as a matter of law to establish invalidity of [a] patent." *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002) (quotation omitted). This Court has also clarified that the corroboration requirement extends to uninterested witnesses "testifying on behalf of an interested party." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999).

### B. The Board Failed to Require Corroboration of Dr. Finin's Testimony as to Whether Exhibits 1006-1012 are the Version of FIPA97 Publicly Available Before the Critical Date

Microsoft next argues that no corroboration was required for Dr. Finin's testimony relating to the issue on appeal, as long as "his testimony is corroborated as a whole." (Response, 29.) This is a misreading of this Court's precedent that this Court has previously rejected.

***First***, the cases Microsoft cites for this proposition are inapposite. For

example, *Ohio Wood* did *not* characterize "as 'misplaced' an argument that a particular claim feature in oral testimony was not separately evidenced." (Response, 29.) Instead, the Court criticized the burden of proof being used *with respect to the requirement* that a particular claim feature in oral testimony was separately evidenced. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1348 (Fed. Cir. 2013). Specifically, this Court held that corroboration did not need to be "independently and conclusively supported by explicit disclosures in the pre-critical date documents or physical exhibits," because "evidence does not become irrelevant to the credibility determination simply because a patentee questions whether it was created shortly after the critical date." *Id. See also TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1301-1302 (Fed. Cir. 2016) ("every detail of the testimony" does not need to "'be independently **and conclusively** supported' by the corroborating evidence.") (emphasis added) (quoting *Ohio Wood*, 755 F.3d at 1348) (citing *Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014) (criticizing burden of proof used *with respect to the requirement* that a particular claim feature in oral testimony was separately evidenced and holding that "[t]he law does not impose an **impossible standard of independence** on corroborative evidence by requiring that every point of a reduction to practice be corroborated by evidence **having a source totally independent of the inventor**") (emphasis added) (quotation omitted)).

***Second***, in *Finnigan*, a witness's testimony that he had publicly performed the claimed invention was corroborated by an article that expressly disclosed **all but a single limitation** of the asserted claims, and "might be understood" by a POSA to disclose this final limitation as well. 180 F.3d at 1365-66. There, this Court rejected application of "certain statements in the case law in support of the proposition that not every aspect of [the witness's] testimony needs to be corroborated," holding that "[t]hese statements, however, are inapt here because they pertained to situations in which the question to be resolved was whether, under the totality of the circumstances, **certain evidence was sufficiently corroborative** of otherwise uncorroborated testimony of invalidating activities." *Id.* at 1369 (emphasis added). This Court reversed the ITC's anticipation determination on the basis that, as to the element in question, "the sole basis to support a determination of a prior public use was [the witness's] testimony concerning his own work; there was no evidence corroborative of this testimony at all" such that "[t]his appeal therefore presents a different question from the 'sufficiency' question presented" in the law addressing determining "whether, under the totality of the circumstances, certain evidence was sufficiently corroborative." *Id.* at 1369-1370. *See also Rosco, Inc. v. Mirror Lite Co.*, 120 F. App'x 832, 836-37 (Fed. Cir. 2005) (reversing invalidity finding based on testimony of two witnesses regarding the prior art mirror they had sold and finding

corroboration missing as to single claim element where corroboration was only by an expert witness testifying about the fact witness in question's demonstration of the mirror, and the court's inspection of the mirror); *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1172 (Fed. Cir. 2006) (holding that inventor notebooks and NMR data had minimum corroborative value because "at most they corroborate that the inventors were in possession of the chemical loratadine as of that date; they do not, in themselves, adequately corroborate the claimed *process*").

### C. The Rule of Reason Analysis Does Not Support the Board's Findings of Corroboration

Only if the Board found corroboration for Dr. Finin's testimony as to whether Exhibits 1006-1012 are the version of FIPA97 publicly available before the critical date does the "rule of reason" analysis apply. *See Finnigan*, 180 F.3d at 1369. Under the "rule of reason" analysis, this Court has identified factors for evaluating the credibility of witness testimony. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 741 (Fed. Cir. 2002) (reversing denial of JMOL of no anticipation where invalidity allegations were based on oral testimony and written evidence held insufficient to corroborate testimony). Although neither the Board nor Microsoft performed this "rule of reason" analysis, even under these factors, Dr. Finin's testimony was insufficiently corroborated. IPA addresses each of these factors below.

**a. (1) delay between event and trial**

The delay between the publication of *a version* of FIPA97 Version 1.0 and Dr. Finin's testimony was "more than 20 years." (Appx12191, 116:24-117:8.)

**b. (2) interest of witness and (8) relationship between witness and alleged prior user.**

Dr. Finin is an interested witness paid $450/hour by Microsoft for his testimony on Microsoft's behalf. (Appx8572, Appx12100-12101, 26:15-27:16.)

**c. (3) contradiction or impeachment and (5) witnesses' familiarity with details of alleged prior structure**

Although Dr. Finin was familiar with the details of FIPA97 when it was written more than twenty years prior, he was no longer familiar with these details by the time of his testimony. (*See* Appx898 (Dr. Finin could no longer "recall many of the details of a 300-page specification more than 20 years after it was created.").) Indeed, Dr. Finin contradicted his ability to recall whether Exhibits 1006-1012—which he found online after the critical date—were identical to what was available online on October 10, 1997, testifying that he could no longer recall "most of the details" of the FIPA97 Version 1.0 specification. (Appx12190-12192 (116:4-16, 116:25-117:1, 117:25-118:10, 118:12-17).)

Because Dr. Finin acknowledged that there existed multiple *different* versions of FIPA97 Version 1.0, it is impossible for Dr. Finin, 20 years later, with an admitted deficit in his memory as to the details of *any version* of FIPA97, to be able to credibly testify that the *Exhibit 1006-1012* Version of FIPA97 that was

available online as FIPA97 Version 1.0 prior to the critical date (as opposed to the *two other different versions* of FIPA97 1.0 that Microsoft chose not to put into evidence). (*See* Appx8588-8589; Appx9022-9043; Appx9345.) It is similarly untenable that, although unable to recall "most of the details" of FIPA97, he could remember 20 years later—without having compared the various versions of FIPA97 Version 1.0 that were available—that the differences between the versions were only "minor" or "clerical." (*See* Appx12185, 111:5-11.)

**d. (4) corroboration**

The evidence Microsoft cites as purportedly corroborating Dr. Finin's testimony goes to whether *a version* of FIPA97 was publicly available prior to the critical date—an issue not on appeal. For example, Microsoft alleges that "[t]he Board credited testimony from both Dr. Finin and Dr. Lieberman that they recalled FIPA 97 Version 1.0 being available on the FIPA website in the 1997-1998 timeframe and had accessed it in late 1997." (Response, 31). This says nothing about whether *Exhibits 1006-1012*—one of many different versions of FIPA97 Version 1.0—are the same as the version accessed online in 1997.

Similarly, Microsoft cites the Board's general proclamation that Dr. Finin's testimony "is corroborated by the evidence in the record of the facts and circumstances surrounding the development and release of the specification as analyzed above." (Response, 32.) However, what the Board "analyzed above" is

whether *a version* of FIPA97 was publicly accessible before the critical date—the issue not on appeal. (*See* Appx897.) This is confirmed by the Board's next sentence that "Dr. Lieberman's testimony that as a member of the interested public he accessed FIPA 97 Version 1.0 in late 1997 is corroborated by the same evidence," as Dr. Lieberman only testified about accessing *some version* of FIPA 97, rather than about Exhibits 1006-1012 specifically. (Appx882, Appx890, Appx898.)

Microsoft also alleges that "IPA does not dispute that hardcover versions of FIPA97, which share the same table of contents as Exhibits 1006-1012, were published in late 1997." (Response, 31.) This is false and irrelevant. ***First***, the tables of contents of Exhibits 1006-1012 are *not the same* as those of the hardcover versions of FIPA97. Indeed, this is why, despite not having access to the hardcover versions of FIPA97 Version 1.0—both IPA and Dr. Finin agreed based solely on a review of the tables of contents that the hardcopy versions were *different* from the version of FIPA97 Version 1.0 found in Exhibits 1006-1012. (Appx9022-9043; *see* Appx8588-8589.) ***Second***, the publication date of the hardcopy version of FIPA97 says nothing about whether the *admittedly different version* of FIPA97 found in Exhibits 1006-1012 is the same as a version publicly available before the critical date.

Microsoft further alleges that "it is undisputed that Exhibits 1006-1012 are

the same FIPA97 currently available on FIPA's home page." (Response, 30-31.) This also says nothing about whether Exhibits 1006-1012 are the version of FIPA97 publicly available before the critical date, as the Board found that "the earliest Internet Archive record of the relevant website pages shows the documents were posted in 2000"—after the critical date. (Appx896.)

Although the Board purports to rely on "the identification of Exhibits 1006-1012 on their cover pages or elsewhere as FIPA 97 Version 1.0 with a date of October 10, 1997" as corroboration of Dr. Finin's testimony, this does not meet the "stringent standard for corroboration." (Appx898.) *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1218 (Fed. Cir. 2002), abrogated on other grounds by *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

***First***, at least three *different* versions of FIPA97 were identified as Version 1.0—the "Reston meeting" FIPA97 Version 1.0, the hardcover book FIPA97 Version 1.0, and the version found in Exhibits 1006-1012. (Appx9345; Appx9022-9043.) Thus, the recitation of "Version 1.0" is immaterial and does not confirm or otherwise indicate that Exhibits 1006-1012 were the one publicly accessible in 1997. Indeed, Exhibits 1006-1012 only identify themselves as Version 1.0 on some pages, listing other pages as Version 2.4. (*See* Appx7529; Appx896.)

***Second***, the October 10, 1997 date appears on all versions of FIPA97 labeled as "Version 1.0," regardless of their actual publication date. Although Dr.

Finin testified that the two hardcopy book versions of FIPA97 were printed on November 28, 1997, each book lists an October 10, 1997 publication date. (*Compare* Appx8588-8589 *with* Appx9023; Appx9042.) Thus, the date on Exhibits 1006-1012 lacks other indicators of reliability illustrated in *Nobel Biocare*—upon which Microsoft relies. There, no evidence contradicted the document's date and there was no reason to believe that the document "was unlikely to have been publicly available as of that date." *See Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1379 (Fed. Cir. 2018). Here, by contrast, the numerous versions of FIPA97 Version 1.0 as well as the known mis-dating of the versions gives reason to believe Exhibits 1006-1012 were "unlikely to have been publicly available as of" October 10,1997.

***Third***, the law is clear that the date on a document is insufficient to prove public accessibility as of that date. *See C.R. Bard, Inc. v. AngioDynamics, Inc.*, 748 F. App'x 1009, 1014-15 (Fed. Cir. 2018) (reversing Board's FWDs, holding the copyright date on a clinical reference guide, along with a declaration attesting that an unidentified number of copies were distributed on an unidentified date to unidentified people was insufficient to support the Board's finding of public accessibility under substantial evidence standard); *In re Power Integrations, Inc.*, 899 F.3d 1316, 1317–18 (Fed. Cir. 2018) (affirming denial of institution where the Board found no obvious indicia of public accessibility despite the published date

appearing on the data sheet and declarant testifying that that data sheet was published and distributed to the public).

Indeed, this case is on point with *B/E Aerospace, Inc. v. C&D Zodiac, Inc.*, 709 F. App'x 687, 698 (Fed. Cir. 2017). There, as here, the question was whether the particular version of the schematic upon which the petitioner relied was publicly available before the critical date. *Id.* In the record was a version of the binder allegedly distributed to customers, along with testimony from petitioner's declarants that the same version of the schematic had been distributed to customers more than 30 years prior, but otherwise vague about events so long in the past. Because the testimony "was 'not definitive of what was published and by when'" and there was no irrefutable testimony that the specific page relied upon was in fact part of the actual binder of materials that was in fact distributed to customers, the Board found that petitioner did not establish public accessibility of the pertinent schematic and the Federal Circuit affirmed. *Id.*

**e. (7) impact of the invention on the industry**

As set forth in its Opening Brief, IPA presented the Board with evidence of the impact of the Siri personal assistant on the industry, as well as evidence that Siri both has its roots in the same project as the patents-at-issue, and embodies the claims at issue. (*See* OpeningBr., 59-65.)

This is the quintessential case where corroboration is necessary, and ultimately lacking. Dr. Finin, a paid witness—although once knowledgeable—could not possibly know which of the many versions of FIPA97 Version 1.0 he publicly accessed more than 20 years ago, given that he admits to having forgotten "most of the details" of FIPA97 by now. And the only evidence the Board claims to be corroborative of Dr. Finin's testimony is contradictory and conflicting. There is no way to square this case with the many cases this Court has reversed for basing invalidity determinations on more and stronger evidence. *See, e.g., Juicy Whip*, 292 F.3d at 740-43; *Woodland Trust*, 148 F.3d at 1371-73; *Finnigan*, 180 F.3d at 1366; *Rosco*, 120 F. App'x at 836-37; *Medichem*, 437 F.3d at 1172. Reversal is also warranted here.

## II. THE BOARD ERRONEOUSLY FOUND THAT THE PRIOR ART SEPARATELY DISCLOSES A "GOAL SATISFACTION PLAN" AND "USES REASONING"

In its Opening Brief, IPA set forth three legal errors the Board committed in determining that the prior art discloses the claimed "goal satisfaction plan": (1) failing to consider the claimed invention as a whole; (2) ignoring one of IPA's arguments for the novelty of "goal satisfaction" plan; and (3) failing to provide any rationale as to why it accepted Microsoft's argument and rejected IPA's argument regarding the disclosure of "using reasoning."

Microsoft defends the Board's first error by arguing that the Board knew

that the "goal satisfaction plan" "must be accomplished using reasoning." (Response, 42-43.) Microsoft's argument misses the point. The Board erred in analyzing the obviousness of each of these claim elements separately, since a "patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). "Failure to consider the claimed invention as a whole is an error of law." *Jones v. Hardy*, 727 F.2d 1524, 1529 (Fed. Cir. 1984).

Microsoft defends the Board's second error by arguing that the Board could not have disregarded IPA's novelty argument based on the recited "goal satisfaction plan" requiring the use of "reasoning" because later in its opinion, the Board separately analyzed the "reasoning" claim element. (Response, 40-44.) Microsoft again misses the point. The fact that later, separate from the "goal satisfaction plan," the Board made a perfunctory determination as to the novelty of "using reasoning" does not remedy the Board's error, as the Board explicitly determined that "Kiss teaches 'constructing a goal satisfaction plan,' as recited in claim 1," before ever undertaking any analysis of whether the "using reasoning" element of the recited "goal satisfaction plan" was disclosed in the prior art. (*Compare* Appx923 *with* Appx925.) *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1075 (Fed. Cir. 2012)

(reversing district court in relevant part for "contravene[ing] this court's precedent requiring that a fact finder consider all evidence relating to obviousness before finding a patent invalid on those grounds."). Moreover, because the Board equated IPA's claim construction arguments with its novelty arguments (which were not the same), the Board necessarily failed to consider each of IPA's arguments in determining the novelty of the recited "goal satisfaction plan." (Appx922-923.)

Finally, Microsoft defends the Board's failure to provide any analysis of the "using reasoning" claim element by ascribing its own arguments to the Board. Specifically, Microsoft argues that the Board "explained why it rejected" IPA's arguments by "conclud[ing] that Microsoft's petition relied on several other ways in which Kiss utilizes reasoning to formulate a solution plan..." (Response, 44-45 (quotations omitted).) In so arguing, Microsoft makes IPA's point. What Microsoft characterizes as the Board's explanation is a recitation of the Petition's allegations. (*Compare* Appx925 *with* Appx4426.) The same is true of Microsoft's second attempt at finding an explanation from the Board, stating that "[t]he Board then explained that 'Kiss describes how the meta-agent can 'formulate parallel sub-plans and perform iterative and recursive procedures.''" (Response, 45.) This is also a recitation of the Petition's allegations. (*Compare* Appx925 *with* Appx4447.)

Other than adding the word "persuasively" to the beginning of Petitioner's arguments, Microsoft cannot point to a single word of the FWD's "reasoning"

section that constitutes any legally required explanation of why the Board rejected IPA's arguments. *See TRUSTID, Inc. v. Next Caller, Inc.*, No. 2020-1950, 2021 WL 4427918, at *8 (Fed. Cir. Sept. 27, 2021) (reversing the PTAB where "the Board merely partially reiterated and summarily rejected Next Caller's arguments without explanation. This is not sufficient under the APA and our precedent."). It is telling that Microsoft argues that "IPA identifies no substantive disagreement with the Board's analysis." (Response, 46.) This is because the Board conducted no analysis with which IPA can disagree. Of course IPA disagrees with the Board's conclusion, however, for all the reasons the Board recited from IPA's brief and summarily rejected.

For these reasons, the Board legally erred in its analysis of the claim elements "goal satisfaction plan" and "using reasoning," warranting reversal.

## III. THE BOARD'S DECISION CANNOT BE RECONCILED WITH THE SPECIFICATION'S EXCLUSION OF META-AGENTS FROM BEING PART OF THE RECITED FACILITATOR AGENT

Microsoft's primary argument in support of the Board's erroneous facilitator agent determination is not that the Board's determination was correct (it was not), but rather that IPA waived its argument that the Kiss meta-agent cannot be a part of the recited facilitator agent. (Response, 47-51.) But IPA did not waive its argument—both because the Board *actually ruled* on IPA's argument (albeit incorrectly), and because IPA argued that the meta-agent cannot be part of a

facilitator agent, regardless of what prior art is combined with the meta-agent.

***First***, "many decisions…recit[e] the general rule that a party may raise on appeal any issue that was raised *or* actually decided below." *Lifestyle Enter., Inc. v. United States*, 751 F.3d 1371, 1377 (Fed. Cir. 2014) (emphasis in original) (rejecting waiver argument because agency passed on the issue below); *see also United States v. Williams*, 504 U.S. 36, 41-43 (1992) (discussing multiple cases standing for the proposition that review is permitted "of an issue not pressed so long as it has been passed upon," and noting that "[t]he standard we previously have employed is that we will not review a question not pressed *or* passed on by the courts below.") (emphasis in original)). Here, the Board ruled that IPA's "argument that the Kiss meta-agent ***cannot be part of*** a 'facilitator agent' in the combined Kiss/FIPA97 system because the '560 patent identifies a meta-agent as a separate component from the facilitator agent is unavailing…" (Appx915 (emphasis added).) The Board's ruling on IPA's argument renders it properly preserved for appeal. *See Hollmer v. Harari*, 681 F.3d 1351, 1356 (Fed. Cir. 2012) (rejecting assertion that appellant "never presented" and therefore waived its argument for applying a particular legal standard, holding that because the PTAB decided the issue "sua sponte…the propriety of that standard is properly before us on appeal.").

***Second***, IPA did argue "that the Kiss meta-agent cannot be part of a

‘facilitator agent’ in the combined Kiss/FIPA97 system because the ’560 patent identifies a meta-agent as a separate component from the facilitator agent”. (*See* Appx915; Appx4715-4716 (“Petitioner has failed to show that the combination of *Kiss* and *FIPA97* disclose a **facilitator agent**” because “[t]he ’560 Patent expressly contrasts the role of facilitator agent from a meta agent.”); Appx4799-4800 (“The *Kiss* meta-agent is **not** a facilitator” because “meta-agents are described in the ’560 Patent itself as part of the OAA architecture and **distinct** from facilitator agents…Meta-agents in the ’560 Patent are client agents as opposed to facilitating agents.”).) Indeed, IPA specifically claimed that this distinction applies even when considering Microsoft’s argument that the facilitator includes the Kiss meta-agent combined with the Kiss agent service layer. (Appx4797-4798 n.10 (“To the extent that **Petitioner claims that the *Kiss* agent service layer**—the portion with the knowledge to answer the queries—**is a part of the ‘facilitator,’ Petitioner is clearly wrong**—the ’560 Patent distinguishes between the facilitator agent and the client agents.”) (emphasis added).) Thus, IPA did not waive this argument for appeal.

Next, Microsoft presents a fallback argument that “IPA fails to meet the exacting standards of proving a disclaimer or lexicographical definition sufficient to rewrite the plain meaning of its claims” because “[t]he portions of the patents identified by IPA do not ‘define’ meta-agents as being mutually exclusive with

facilitator agents". (Response, 51-52.) Not so. As IPA's Opening Brief explains, the patents-at-issue define meta-agents as a category of client agents, and define client agents as "[a]ll agents that are not facilitators."[1] (Appx1351, 6:54-62; *see* OpeningBr., 45-50.) This is what it means to be mutually exclusive.

Microsoft tries to detract from this clear exclusion of meta-agents and other client agents from facilitator agents by selectively quoting language in which, according to Microsoft, the patents-at-issue disclose the facilitators acting as client agents. (Response, 53-55.) For instance, Microsoft points to Figure 15 of the patents-at-issue, arguing that "it is impossible to distinguish the supporting facilitators of Figure 15…from a meta-agent like those disclosed in Figures 3-4. (Response, 54.) But the patents-at-issue *do* so distinguish, explaining Figure 15 depicts a hierarchical topology "where a top level Facilitator manages **collections of both client agents 1508 and other Facilitators**, 1504 and 1506." (Appx1362, 28:61-63 (emphasis added).) Thus, even when a facilitator is in a hierarchy of facilitators, the patents-at-issue still distinguish the lower level "other facilitators" (which have different functions from the meta-agent, as IPA's Opening Brief

---

[1] Microsoft tries to distinguish between this language that excludes "a meta-agent from being a 'facilitator' from exclusion from being a "facilitator agent." (Response, 55.) But the patents clearly state that "all **agents** that are not **facilitators** are referred to herein generically as client agents." (Appx1351, 6:54-56.) Thus, the patents separate "agents that are not facilitators"—client agents—from agents that *are* facilitators— e.g., facilitator agents.

explains) from "client agents," which include meta-agents.

Finally, Microsoft argues that there is "considerable uncertainty regarding the scope of what would be excluded under IPA's understanding of the claims." (Response, 55.) This argument falls flat in light of the fact that Microsoft has never disputed IPA's assertions that "[t]he *Kiss* meta-agent is similar to the meta-agent of the [patents-at-issue,], or that "the term 'meta-agent' was a commonly used term in the field before the 1998/1999 time frame to describe agents that sit in an intermediate layer to manage agent resources." (*See* Appx4799; Appx4801). Indeed, Microsoft's own prior art employs the term. (*See* Appx4407.) Thus, it is disingenuous (and too late) for Microsoft to assert for the first time on appeal that a POSA would not understand what to exclude from the scope of facilitator agents. Moreover, because the patents-at-issue define *client agents* (the group of agents including but not limited to meta-agents) as "all agents that are not facilitators," a POSA need only know what a facilitator agent is to know what to exclude from this category of client agents. (*See* Appx1351, 6:54-56.) And since Microsoft has never alleged, and the Board has never held, that the term "facilitator" is indefinite, Microsoft has waived the opportunity to allege that a POSA would not know what agents to exclude from the category of "client agents," which includes meta-agents. For these reasons, Microsoft's arguments cannot remedy the Board's error in finding—contrary to the patents-at-issue's specification—that Kiss's meta-agent

can be part of the recited facilitator agent. It cannot. The Board must be reversed.

## IV. THE BOARD LEGALLY ERRED IN DETERMINING THAT FIPA97 DISCLOSES THE RECITED ICL ELEMENT "WHEREIN THE PARAMETER LISTS FURTHER REFINE THE ONE OR MORE EVENTS"

The Board committed multiple legal errors in finding that FIPA97 discloses the recited ICL, as set forth in IPA's Opening Brief. (OpeningBr., 48-58.) Microsoft's Response misses the point of IPA's arguments. ***First***, Microsoft mischaracterizes IPA's arguments as being "claim construction arguments" that are "waived as untimely." (Response, 58.) This is false. Notably, Microsoft does not allege that IPA makes any arguments on appeal that it did not make before the Board. (*See id.*, 58-61.) Thus, IPA did not waive its arguments. *See Lifestyle*, 751 F.3d at 1377.

Microsoft also makes much about the fact that IPA has never contested the proposed construction that "the parameter lists further refine the one or more events" means "a list of parameters associated with an event can refine the event by affecting the meaning of the event." (Response, 58-59.) This is irrelevant, as Microsoft admits that IPA has disputed what it means for a list of parameters to be able to "affect" the "meaning" of messages. (*See id.*, 59.) Indeed, that is the heart of what IPA disputes here—the Board's interpretation of what it means for a list of parameters to be able to "affect" the "meaning" of an event. And because the Board did not make its claim construction or any other ruling until its FWD, it was

proper for IPA to argue what it means for a list of parameters to be able to "affect" the "meaning" of an event through sur-reply and oral argument. Because IPA did this, it is proper for IPA to raise this issue on appeal.

***Second***, Microsoft tellingly offers zero explanation for its assertion that the Board did not commit legal error by impermissibly shifting the burden to IPA to prove the validity of its claims. (Response, 68.)

During prosecution, Applicants amended the claims to add the limitation "wherein the parameter lists further refine the one or more events" to "distinguish KQML from ICL," and particularly KQML as described in the Nwana reference. (Appx4735-4737; Appx4740-4741.) Thus, the correct meaning of "wherein the parameter lists further refine the one or more events," which the Board held encompasses "affecting the meaning of the events," must be different from what is disclosed in the distinguished Nwana reference. (Appx929.) *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1998) (Indeed, "[b]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover.") (quotation omitted); *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019) ("A disavowal must be clear, but it need not be explicit…An inventor may also disavow claim scope 'by distinguishing the claimed invention over the prior art.'") (quotation omitted). Because during prosecution, Applicants distinguished and therefore disclaimed the

KQML ACL messaging disclosed in Nwana, it was *Microsoft*'s burden in proving invalidity to demonstrate that FIPA97's ACL messaging (shown on right, below) is *different from* the Nwana disclosure that Applicants disclaimed (shown on left, below).

| | |
|---|---|
| (tell<br>: content "cost(bt, service-4, £5677)<br>: language standard prolog<br>: ontology bt-services-domain<br>: in-reply-to quote service-4<br>: receiver customer-2<br>: sender bt-customer-services) | (inform<br>:sender agent1<br>:receiver hpl-auction-server<br>:content<br>(price (bid good02) 150)<br>:in-reply-to round-4<br>:reply-with bid04<br>:language sl<br>:ontology hpl-auction<br>) |
| KQML (Ex. 1020, 5.) | *FIPA97* (Ex. 1007, 12 (labels omitted).) |

(Appx4835.)

And yet, despite *Microsoft* holding the burden of proving invalidity, the Board found that "[IPA], however, does not discuss the disclosure of KQML/Nwana [Appx7961-7978] sufficiently (other than pointing to the similarity of the format between the ':receiver' parameter of KQML and FIPA97) or explain adequately why KQML's ':receiver" parameter is similar to the FIPA97 ":receiver" parameter." (Appx936.) In other words, the Board required *IPA* to prove that FIPA97 is *the same* as the Nwana reference Applicants distinguished during prosecution. This alone was reversible error. *See In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1378, 1381 (Fed. Cir. 2016) (reversing the Board for "an

improper shifting of the burden to Magnum, the patentee, to prove that the claimed invention would not have been obvious.").

***Finally***, Microsoft argues that "IPA does not dispute that FIPA97's disclosure is distinguishable from 'the identities of the sender and the recipient' found by the examiner to be disclosed by the Nwana reference." (Response, 64.) This is false. The heart of IPA's argument is that Microsoft failed to meet its burden of providing evidence that FIPA97 is distinct from Nwana/KQML in a way that would allow FIPA97 to disclose the recited ICL claim elements.

Specifically, although Microsoft argues that FIPA97's "'receiver parameter that allows one to specify whether a message is ***intended*** for one, some, or all of a given set of users" "refines" the event, Microsoft provided no evidence that Nwana/KQML did not also have the same intent for its designated recipient(s) to receive its messages.[2] (*See* Response, 64-65.) Indeed, that would seem to be the natural purpose of the "recipient" parameter shared by FIPA97 and Nwana/KQML. Thus, it is clear from the prosecution history that the "recipient" is *not* a parameter that can refine the event as the claims recite. (Appx6324; Appx9403.) Rather, as

---

[2] Microsoft alleges that IPA "attack[s] the specificity provided *by the examiner* in the notice of allowance". (Response, 64.) Not so. IPA faults *Microsoft*—the party with the burden of proof—for not providing the evidence required to distinguish its asserted prior art from the art that IPA distinguished and overcame (and thus disclaimed) during prosecution.

Microsoft admits, the claimed ICL has the ability to alter the *message*—refining the event—by allowing for limitless altering of the number of solutions requested, which will alter the message received. (*See* Response, 66 (patents-at-issue performative's "meaning depends on the value of the parameter 'solution_limit(N)' and the value of 'N,' e.g., to request the identity of three agents capable of translating a document, one would include 'solution_limit(N)' in the message and set N=3"—where the message received will be different than if 1, 2, 4, 5, or more agents' identities were requested, thus refining the message.) And Microsoft provided no other parameter that could refine the event in the way Applicants described in the specification and prosecution history. Thus, the Board's determination that FIPA97 discloses the recited ICL elements cannot stand.

## V. THE BOARD ERRONEOULSY DISREGARDED IPA'S UNREBUTTED OBJECTIVE INDICIA OF OBVIOUSNESS EVIDENCE

"Whether before the Board or a court, this court has emphasized that consideration of the objective indicia is part of the whole obviousness analysis, not just an afterthought." *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357–58 (Fed. Cir. 2013). And yet an afterthought is exactly how the Board treated IPA's *unrebutted* evidence of secondary considerations. Microsoft's Response does not indicate otherwise.

***First***, Microsoft defends the Board's finding by arguing that "the Board

correctly rejected the fundamental assumption at the core of IPA's argument: it determined that 'there is evidence of record that credits the CALO project' *rather than OAA v.2*, 'with being the progenitor of the ideas that led to Siri." (Response, 70.) But the insertion of "version 2" into the Board's analysis is Microsoft's own attempt to save the Board's decision—the Board *never* mentioned the various versions of OAA in its analysis. Instead, the Board held that "there is evidence of record that credits the CALO project with being the progenitor of the ideas that led to Siri." (Appx967.) But as Microsoft admits in Response, this evidence does not contradict the fact that OAA was the progenitor of this CALO project. (*See* Response, 71.) Microsoft's argument that the record evidence does not establish *which version of OAA* was the progenitor of the CALO project is irrelevant, as this is not the evidence IPA used to show that Siri embodies the claims of the patents-at-issue—it was the evidence the Board erroneously cited as *contradicting* IPA's evidence. (*See* Appx967-968.)

***Second***, Microsoft argues that the Board was correct in rejecting IPA's *unrebutted* evidence that Siri embodies the claims of the patents-at-issue because the evidence was largely circumstantial and was incomplete without a review of Siri's code. (Response, 70-73.) But this Court has held that "the law makes no distinction between direct and circumstantial evidence; both are valid measures of proof." *United States v. C.H. Robinson Co.*, 760 F.3d 1376, 1382 (Fed. Cir. 2014).

Thus, the circumstantial nature of IPA's evidence does not change the fact that it went unrebutted. And "[w]hen the patentee has presented undisputed evidence that its product is the invention disclosed in the challenged claims, it is error for the Board to find to the contrary without further explanation." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 747 (Fed. Cir. 2016) (reversing the Board for rejecting Patent Owner's unrebutted evidence because the "Board found [Patent Owner's expert's] averments to be 'conclusory statements'"). That is what the Board did here.

The only "explanation" that the Board provided for rejecting IPA's evidence was based on blind acceptance of Microsoft's mischaracterization of the testimony of Microsoft's expert, and still did nothing to rebut IPA's evidence. (*See* Appx965.) The Board relied on Microsoft's incomplete quotation of Dr. Medvidovic's testimony that he could not determine "what kinds of facilities the agent provides" without looking at Siri's code. (Appx964-965.) However, Dr. Medvidovic *actually* testified that he would not need the Siri code for his analysis "[i]f there were additional facilities, models, and specifications provided". (Appx5111.) But Dr. Medvidovic *did have additional facilities, models, and specifications* for how Siri works, as set forth in IPA's Opening Brief, and as further evidenced by the fact that Dr. Medvidovic *was able to opine* about the kinds of facilities that Siri's agent provides. (IPA OpeningBr., 62-63; *see*

Appx11498-11512; Appx12863-12878.) Further, the Board did not even attempt to analyze whether Dr. Medvidovic had the "additional facilities, models, and specifications" before him to analyze how Siri works, but instead rejected Dr. Medvidovic's testimony as circumstantial, without any evidence rebutting it. (*See* Appx965-966.) This was error.

***Third***, Microsoft criticizes Dr. Medvidovic for not "point[ing] to any evidence to show that the Siri application utilizes the claimed parameter lists." (Response, 74.) But the law requires that objective evidence of nonobviousness need only be "reasonably commensurate with the scope of the claims." *Rambus Inc. v. Rea*, 731 F.3d 1248, 1257 (Fed. Cir. 2013). And the numerous pages of claim charts that Dr. Medvidovic provided—and the Board ignored—showing that Siri embodies the claims-at-issue accomplishes significantly more than the law requires. (*See* Appx11498-11512, Appx12863-12878.)

***Finally***, Microsoft defends the Board's determination that IPA "fail[ed] to establish a nexus between the evidence and the merits of the claimed invention" because "Dr. Medvidovic…only mentions Siri's conversational interface in passing, even though Exhibit 2040 highlights such functionality and lists it as the first of Siri's three main technical components." (Response, 76 (quotations omitted).) But this is not what the law requires. Rather, "[w]hen the thing that is commercially successful is not coextensive with the patented invention—for

example, if the patented invention is only a component of a commercially successful machine or process—the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold." *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018) (quotation omitted). Neither Microsoft nor the Board disputes that Dr. Medvidovic established nexus between the claimed invention and *two of Siri's three main technical components*. (*See id.*) But the Board failed to evaluate whether IPA "show[ed] prima facie a legally sufficient relationship between that which is patented and that which is sold," as required. (*See* Appx968-970.) This was error.

## CONCLUSION

The Board committed clear legal error when it failed to require corroboration of Dr. Finin's testimony that Exhibits 1006-1012 were publicly available before the critical date, failed to consider the invention as a whole when conducting its analysis, applied a construction inconsistent with the prosecution history, failed to provide an explanation for its conclusions, improperly shifted the burden of proof to IPA, and failed to consider IPA's unrebutted evidence of secondary considerations. Further, there is no substantial evidence to support the Board's factual findings, which are clearly contradicted by the evidence of record.

The FWDs should be reversed.

Dated: December 15, 2021

Respectfully submitted:

/s/ Sarah E. Spires
Paul J. Skiermont
Steven W. Hartsell
Jaime K. Olin
Sarah E. Spires
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Tel: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
shartsell@skiermontderby.com
jolin@skiermontderby.com
sspires@skiermontderby.com

Mieke K. Malmberg
SKIERMONT DERBY LLP
800 Wilshire Blvd., Suite 1450
Los Angeles, CA 90017
Tel: (213) 788-4502
Fax: (213) 788-4500
mmalmberg@skiermontderby.com

Counsel for Cross-Appellant
*IPA Technologies Inc.*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2021-1412, -1413, -1414, -1416, -1417, -1418, -1419, -1420, -1421, -1422, -1423, -1424, -1440, -1442

**Short Case Caption:** Microsoft Corporation v. IPA Technologies Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 7,000 words.

- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.

- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 12/15/2021

Signature: /s/ Sarah E. Spires

Name: Sarah E. Spires